MICHIGAN CHIROPRACTIC COUNCIL v COMMISSIONER OF THE
OFFICE OF FINANCIAL AND INSURANCE SERVICES

Docket Nos. 241870, 241874. Submitted January 20, 2004, at Lansing.
Decided June 1, 2004, at 9:15 A.M. Leave to appeal sought.

The Michigan Chiropractic Council and the Michigan Chiropractic
Society petitioned the Ingham Circuit Court for judicial review of
a decision of the Commissioner of the Office of Financial and
Insurance Services rejecting the petitioners' challenge of the
commissioner's approval of a preferred provider organization (PPO)
endorsement offered in no-fault automobile insurance policies of
Farmers Insurance Exchange and Mid-Century Insurance Com-
pany. The PPO endorsement permitted policyholders the option of
receiving a reduction in their personal injury protection (PIP)
premium in exchange for agreeing to obtain medical treatment
exclusively from providers in the insurers' PPO network. The
petitioners contended that the PPO endorsement constituted an
unfair, deceptive, or misleading trade practice and violated the
no-fault insurance act. The circuit court, Thomas L. Brown, J.,
allowed the insurers to intervene as respondents and concluded
that the PPO endorsement inherently conflicted with the no-fault
insurance scheme of a fee-for-service system by implementing a
managed care system that limited the choice policyholders had in
obtaining medical services. On that basis, the circuit court re-
versed the commissioner's decision to permit the respondent
insurers' usage of the no-fault PPO endorsement. The commis-
sioner and the respondent insurers appealed separately, and the
appeals were consolidated.

The Court of Appeals *held*:

The circuit court correctly determined that the PPO endorse-
ment option incorporated managed care into the no-fault system
contrary to the no-fault act's scheme.

1. Under the no-fault scheme PIP insurance is designed to be
comprehensive by covering all reasonable charges incurred for
reasonably necessary medical care occasioned by injuries sustained
in a motor vehicle accident. MCL 500.3107. The no-fault act,
however, is silent with respect to the issue of the provision of
medical care benefits through a managed care system. Whether

incorporation of a managed care system is permissible under the act depends on whether the system is in harmony with the no-fault scheme established by the Legislature.

2. The respondent insurers' PPO endorsement is implemented through their no-fault automobile insurance policies. The endorsement offers policyholders a premium rate reduction for PIP insurance provided the policyholder chooses to use a physician from the respondents' captured network of medical care providers for medical health care in the event of a covered injury. In exchange for choosing this option, however, a policyholder forfeits other permissible options for reduction in PIP premium rates offered in the respondents' policies.

3. On one level, the respondent insurers' PPO endorsement is misleading, MCL 500.2029, because it lures an unsuspecting consumer into accepting the well publicized PIP rate reduction offered under the endorsement without sufficiently clear explication that the consumer loses significant, and possibly comparable, premium discounts under other already permissible options. On another level, the PPO endorsement also violates the no-fault scheme in incorporating managed care into the general no-fault medical benefits mandated by MCL 500.3107. In this regard, implementation of the respondents' managed care system is outside the judicially sanctioned managed care provided under health care plans through the no-fault provisions related to coordinated benefits. MCL 500.3109a. Under § 3109a, insurers are required to offer reduced premiums for coordinating no-fault benefits with health and accident coverage, and, if this option is chosen, no-fault insurers are not liable for medical expenses that the insured's coordinated health care plan insurer is contractually required to pay. In that framework, the insured's health care plan insurer can require the insured to choose from a limited group of medical care providers. However, outside that framework, and where the managed care does not meet the broader liability for all reasonably necessary medical services required under § 3107, the no-fault insurer remains liable to designated physicians and facilities for reasonable medical care expenses without limitation.

4. The fact that the Legislature has addressed premium rate reductions under a managed care-coordination of benefits framework but has been silent in permitting rate reductions in exchange for limited medical care benefits under § 3107 is indicative of its intent that this option is not intended and therefore impermissible. Fundamentally, the respondent insurers' PPO endorsement, with its limitation of choice and penalty provision, contravenes the no-fault act's core premise and promise of wide ranging medical

benefits from the available spectrum of providers in exchange for the driving public's acceptance of a statutorily prescribed, limited redress system for personal injuries suffered. Only the Legislature may affect that premise and promise by incorporating managed care into the no-fault scheme.

Affirmed.

WHITE, J., concurring in the majority opinion, except for section IV(A), observed that because the no-fault act does not address the managed care option within the respondent insurers' PPO endorsement, that endorsement is impermissible and unenforceable only to the extent that it reduces the coverage required by the no-fault act. Here, the endorsement provides the coverage required by the act if an insured goes to a network designated managed care provider. However, the endorsement clearly violates the act by reducing the required coverage when an insured goes out of network because then the amount paid for reasonably necessary medical care will not be a reasonable charge as required by MCL 500.3107, but rather the amount paid will be under the carrier's usual and customary fee schedule. In a similar light, the respondent insurers' penalty provision within its PPO endorsement also reduces the coverage required by the act and therefore violates the act.

INSURANCE — NO-FAULT — REDUCTION OF PREMIUMS FOR PERSONAL INJURY PROTECTION — LIMITATION OF BENEFITS — MANAGED CARE — PREFERRED PROVIDER ORGANIZATIONS.

The no-fault act's scheme permits premium rate reductions under a managed care system only through statutory provisions for coordination of benefits; therefore, an insurer's preferred provider organization endorsement option within its no-fault automobile insurance policies that limits a policyholder's choice of medical care in exchange for a reduced personal injury protection insurance premium rate violates the act (MCL 500.3109a, 500.3107).

*Miller, Canfield, Paddock & Stone, PLC* (by *Kevin J. Moody, Polly Ann Synk,* and *Jaclyn Shoshana Levine*), for Michigan Chiropractic Council and Michigan Chiropractic Society.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *William A. Chenoweth,* Assistant Attorney General, for Commissioner of the Office of Financial and Insurance Services.

*Warner Norcross & Judd, LLP* (by *Peter L. Gustafson* and *Jeffrey O. Birkhold*), for Farmers Insurance Exchange and Mid-Century Insurance Company.

Amici Curiae:

*Sinas, Dramis, Brake, Boughton & McIntyre, P.C.* (by *George T. Sinas* and *L. Page Graves*), for Brain Injury Association of Michigan, Michigan Brain Injury Providers Council, and Michigan Orthotics & Prosthetics Association.

*John P. Jacobs, P.C.* (by *John P. Jacobs*), for Manage-Ability, Inc.

*Kerr, Russell and Weber, PLC* (by *Richard D. Weber* and *Joanne Geha Swanson*), for Michigan State Medical Society.

*Willingham & Coté, P.C.* (by *John A. Yeager*), for Insurance Institute of Michigan.

Before: FITZGERALD, P.J., and NEFF and WHITE, JJ.

NEFF, J. In these consolidated appeals, respondent Commissioner of the Office of Financial and Insurance Services, and intervenors-respondents Farmers Insurance Exchange and Mid-Century Insurance Company (Farmers) appeal by leave granted an order of the circuit court that reversed the commissioner's denial of petitioners' challenge to a preferred provider organization (PPO) option offered in Farmers' no-fault automobile insurance policies. The circuit court concluded that Farmers' PPO option violated the no-fault statute, MCL 500.3101 *et seq.*, by illegally adding an additional requirement that health care providers be members of Farmers' exclusive Preferred Providers of Michigan (PPOM) network. We affirm.

I

This case presents an issue of first impression. The essential question is whether Farmers' implementation of a PPO endorsement option within its Michigan no-fault automobile insurance policies, by which policy-holders receive a reduction in their personal injury protection (PIP) premium in exchange for agreeing to obtain medical treatment exclusively from providers in Farmers' PPO network, violates Michigan's no-fault insurance statute. We concur in the circuit court's conclusion that the PPO endorsement inherently conflicts with Michigan's no-fault insurance scheme, which was enacted as a fee-for-service system with regard to medical benefits. We therefore find no error in the circuit court's reversal of the commissioner's decision to permit Farmers' no-fault PPO endorsement.

II

The parties disagree on the standard of review. Their dispute is essentially resolved by this Court's explication of the standard of review applicable to a decision of the commissioner that is not based on an evidentiary hearing, i.e., that is not a contested case. *Northwestern Nat'l Cas Co v Comm'r of Ins,* 231 Mich App 483, 487-491; 586 NW2d 563 (1998); see also LeDuc, Michigan Administrative Law, § 8:08, p 564, § 9:02, p 601, § 9:05, pp 608-609. Judicial review in this instance is limited in scope to whether the action of the agency was "authorized by law." *Northwestern Nat'l Cas, supra* at 488. An agency's decision is not authorized by law if it violates a statute or the Constitution, exceeds the statutory authority or jurisdiction of the agency, is based on unlawful procedures resulting in material prejudice, or is arbitrary and capricious. *Id.*

Whether an agency decision violates a statute or the Constitution is a question of law to be decided by the courts, and the principles of statutory construction are relevant. LeDuc, § 9:19, p 636. The courts generally accord deference to an agency's interpretation of a statute in view of the agency's substantial expertise and unique role in regard to the statute at issue unless that interpretation is clearly wrong. *Id.* at 636-638; *Taylor v Second Injury Fund,* 234 Mich App 1, 13; 592 NW2d 103 (1999); see also *Consumers Power Co v Pub Service Comm,* 460 Mich 148, 173-175; 596 NW2d 126 (1999) (BRICKLEY, J., dissenting) (noting the varying deference accorded agency interpretation of statutes). Nonetheless, an administrative interpretation is not binding on the courts and must be rejected if not in accord with the intent of the Legislature. *Lanzo Constr Co, Inc v Dep't of Labor,* 86 Mich App 408, 414; 272 NW2d 662 (1978). "[D]eference is given to an administrative agency's decisions, provided that the agency's construction is consistent with the purpose and policies of the statute itself." *Empire Iron Mining Partnership v Orhanen,* 455 Mich 410, 416; 565 NW2d 844 (1997).

III

This case has its genesis in the commissioner's tacit approval of Farmers' PPO option policy as a new no-fault insurance product in Michigan effective in July 2000, pursuant to MCL 500.2236. The Legislature granted the commissioner the power to approve insurance forms before they are used. *American Community Mut Ins Co v Comm'r of Ins,* 195 Mich App 351, 357; 491 NW2d 597 (1992). Under MCL 500.2236(1), the commissioner has a duty to determine that all the statutory requirements of the no-fault act are complied with in insurance

policies. *Cruz v State Farm Mut Automobile Ins Co,* 466 Mich 588, 599 n 15; 648 NW2d 591 (2002).

MCL 500.2236 provides in relevant part:[1]

> A basic insurance policy form . . . shall not be issued or delivered to any person in this state, and an insurance . . . application form if a written application is required and is to be made a part of the policy or contract, a printed rider or indorsement form or form of renewal certificate, and a group certificate in connection with the policy or contract, shall not be issued or delivered to a person in this state, until a copy of the form is filed with the insurance bureau and approved by the commissioner as conforming with the requirements of this act and not inconsistent with the law. Failure of the commissioner to act within 30 days after submittal constitutes approval. . . . [MCL 500.2236(1).]

The statute requires form approval by the commissioner to protect the public from clauses that mislead, deceive, or unreasonably deny coverage. *American Community Mut Ins, supra* at 358; *Progressive Mut Ins Co v Taylor,* 35 Mich App 633, 642; 193 NW2d 54 (1971). In this case, the commissioner did not act on the policy form submitted by Farmers and, consequently, Farmers' new PPO option was automatically approved after thirty days. MCL 500.2236(1).

In August 2000, petitioners filed a request for issuance of a notice of hearing and commencement of administrative proceedings with the commissioner pursuant to MCL 500.2029 and MCL 500.2236. Petitioners alleged that Farmers' offer or imposition of a managed care[2] network was unlawful under the no-fault act

---

[1] Minor changes in § 2236 were effected by 2002 PA 664 but do not bear on the analysis in this case.

[2] "Managed care encompasses a variety of health-care delivery forms including HMOs, PPOs, individual practice associations, as well as other prepaid health plans." Gilchrist, *Managed care takes to the highway: implication for insureds,* 29 Journal of Law, Medicine & Ethics (JLME-

because there is no authority under the act for implementing a managed care scheme. Petitioners sought commencement of a Chapter 20[3] proceeding against Farmers for unfair, deceptive, and misleading trade practices pursuant to § 2029 and issuance of a notice of disapproval by the commissioner pursuant to § 2236.

Under the Insurance Code, the commissioner has the power, upon probable cause, to investigate the affairs of a person engaged in the insurance business in Michigan.[4] MCL 500.2028. Pursuant to MCL 500.2029, the commissioner may conduct a hearing when there is probable cause to believe that an insurer is engaged in unfair or deceptive practices:

> When the commissioner has probable cause to believe that a person engaged in the business of insurance has been engaged or is engaging in this state in an unfair method of competition, or an unfair or deceptive act or practice in the conduct of his business, as prohibited by sections 2001 to 2050 [MCL 500.2001 to MCL 500.2050], and that a hearing by the commissioner in respect thereto would be in the interest of the public, he shall first give notice in writing . . . to the person involved, setting forth the general nature of the complaint against him and the proceedings contemplated pursuant to sections 2001 to 2050. . . .

---

DETH) 203, 207 (2001). Managed care represents a shift from the traditional fee-for-service payment arrangements for health care costs. *Id.* at 203, 206. According to the Gilchrist article, four state legislatures and one commissioner of insurance (Massachusetts) to date had authorized insurance companies to offer consumers a managed care option in automobile insurance policies. *Id.* at 203-205.

[3] Chapter 20 provides recourse for unfair and prohibited trade practices and frauds.

[4] MCL 500.2028 provides: "Upon probable cause, the commissioner shall have power to examine and investigate into the affairs of a person engaged in the business of insurance in this state to determine whether the person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by sections 2001 to 2050 [MCL 500.2001 to MCL 500.2050]."

MCL 500.2236(5) provides for the commissioner's withdrawal of approval of an insurance form:

> Upon written notice to the insurer, the commissioner may disapprove, withdraw approval or prohibit the issuance, advertising, or delivery of any form to any person in this state if it violates any provisions of this act, or contains inconsistent, ambiguous, or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy. . . .

The commissioner denied petitioners' request for a contested hearing, finding that they had failed to show probable cause to support their request. The commissioner also concluded that Farmers' PPO option did not violate the Insurance Code.

Petitioners sought review of the commissioner's decision in the circuit court. Following a hearing, the court reversed the commissioner's decision, finding that Farmers' PPO option is not authorized by law. The court agreed with petitioners that the authority to incorporate managed care into the no-fault system is a matter for the Legislature to decide. We concur in these conclusions and affirm the decision of the circuit court on that basis.

IV

The no-fault act[5] was enacted by the Legislature in 1972 as a comprehensive scheme of compensation designed to provide sure and speedy recovery of certain economic losses resulting from motor vehicle accidents. *Spencer v Citizens Ins Co,* 239 Mich App 291, 300; 608 NW2d 113 (2000). The act radically redefined the

---

[5] 1972 PA 294.

nature of Michigan's motor vehicle insurance. *Cruz,
supra* at 595-596; *Shavers v Kelley*, 402 Mich 554, 590;
267 NW2d 72 (1978).

> The Michigan No-Fault Insurance Act, which became
> law on October 1, 1973, was offered as an innovative social
> and legal response to the long payment delays, inequitable
> payment structure, and high legal costs inherent in the tort
> (or "fault") liability system. The goal of the no-fault
> insurance system was to provide victims of motor vehicle
> accidents assured, adequate, and prompt reparation for
> certain economic losses. The Legislature believed this goal
> could be most effectively achieved through a system of
> *compulsory* insurance, whereby every Michigan motorist
> would be required to purchase no-fault insurance or be
> unable to operate a motor vehicle legally in this state.
> Under this system, victims of motor vehicle accidents
> would receive insurance benefits for their injuries as a
> substitute for their common-law remedy in tort. [*Id.* at
> 578-579.]

Under the no-fault act, PIP insurance is based on a
comprehensive and expeditious benefit system. *Id.* at
579.

> In general, personal injury protection insurance under
> the act provides:
> (a) all medical costs and expenses occasioned by injuries
> sustained in a motor vehicle accident, including expenses
> for rehabilitation. . . . [*Id.* at 620, citing MCL 500.3107.]

Despite their comprehensive nature, the statutory
provisions mandating medical benefits are brief and
concise. Section 3105 of the act provides that, subject to
the other provisions of the act, "an insurer is liable to
pay benefits for accidental bodily injury arising out of
the ownership, operation, maintenance or use of a
motor vehicle . . . ." MCL 500.3105(1); *Sprague v Farm-
ers Ins Exch*, 251 Mich App 260, 266; 650 NW2d 374
(2002). The specific requirements for medical benefits

are governed by MCL 500.3107 and MCL 500.3157. Subsection 3107(1)(a) sets forth the type of benefits a no-fault insurer is liable for under § 3105. Section 3157 details the allowable provider charges. *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n,* 257 Mich App 365, 373-374; 670 NW2d 569 (2003).

MCL 500.3107 provides in pertinent part:

> (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> (a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

MCL 500.3157 provides:

> A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

It is undisputed that the no-fault act is silent on the issue of managed care medical benefits. The parties take opposing positions on the legal implication of this lack of an explicit pronouncement on managed care by the Legislature. Petitioners argue that there is no statutory authority for the PPO endorsement and it is therefore illegal. Farmers argues that the no-fault act does not proscribe a PPO option and therefore it does not violate the statute because it meets the statutory requirements for no-fault medical benefits, i.e., reim-

bursement of all reasonable charges for reasonably necessary products, services, and accommodations. MCL 500.3107.

The no-fault act's silence with regard to a particular matter does not necessarily preclude its use. *Cruz, supra* at 598. An insurer's provision that facilitates the goals of the act and is harmonious with the Legislature's no-fault insurance regime is valid. *Id.* Conversely, a provision that is not in harmony with the no-fault scheme established by the Legislature must be rejected. *Id.*

A

The PPO endorsement to Farmers' no-fault insurance policies states:

> (c) Preferred Provider Option Endorsement—
>
> Policyholders who elect the Preferred Provider Endorsement will receive a 40% reduction on their PIP rate. The endorsement requires the insured to choose a physician from our captured network, Preferred Providers of Michigan, to manage health care in the event of a covered injury.
>
> The E7143 will not be allowed if the option is selected. The other insurance credit will not be allowed if this option is selected.
>
> All policies in the household are required to carry the PPO option if the insured selects this option. Disclosure form 51-0693 must be signed by the insured for each policy in the household to verify selection of the PPO option.

The E7143 referenced in the PPO option is a PIP rate reduction offered for a $300 deductible:[6]

---

[6] Under subsection 3109(3) of the no-fault act, "[a]n insurer providing personal protection insurance benefits may offer, at appropriately reduced premium rates, a deductible of a specified dollar amount which does not exceed $300.00 per accident." MCL 500.3109(3).

(a) $300 Deductible P.I.P. (E-7143)—

Policyholders who elect to take the "Endorsement Establishing Deductible and Waiting Period" will receive a 15% reduction from the P.I.P. rates. The endorsement provides a $300 medical deductible and a 7 day waiting period on benefits for "work loss". (Not available if the other insurance rate credit is taken.)

The "other insurance credit" referenced in the PPO option states:[7]

(b) Other Insurance Rate Credit—

P.I.P. rates are discounted 25% if the insured elects their [sic] P.I.P. coverage to be secondary over other A & H medical insurance or another 10% if he elects his weekly indemnity coverage to be secondary to other wage continuation coverage. Thirty Five percent (35%) will be deducted if both coverages are secondary.

These credits are applied to the reduced rate after other credits such as second car discount, etc., have been applied.

If this option is selected, the $300 deductible credit under the E-7143 described in (a) above will not be allowed.

Thus, under Farmers' policies, if a policyholder elects the PPO option, the policyholder forfeits other PIP premium deductions. This "exchange system" of premium discounts renders illusory the touted reduction in the cost of insurance to policyholders. The question arises whether consumers, who are prone to overlook the details of their insurance policies, will be lured to accept the PPO option on the basis of the well-publicized forty-percent reduction in their PIP rate, when in fact many will lose significant, and perhaps comparable, premium discounts for the other insurance option or the E-7143, already in place, but which would no longer

---

[7] The "other insurance credit" is presumably offered pursuant to § 3109a, MCL 500.3109a, the no-fault act's coordination of benefits provision. *Sprague, supra* at 267.

apply. This system certainly has the potential for deception—misleading consumers and the public in general. This potential deception provides further basis for reversing the commissioner's decision pursuant to MCL 500.2029, on the basis of unfair, deceptive, and misleading trade practices.

B

Farmers imposes penalties if a policyholder selects the PPO option, but subsequently goes out of network:

> [I]f a policyholder elects to go out of network for care, they [sic] will be required to pay:
>
> - a $500 deductible (which is not applicable to those who stay in network for care)
> - any charges by the provider beyond which would have been reimbursed according to the carriers' usual and customary fee schedule.

While the Michigan Supreme Court has sanctioned managed care under the no-fault act, this sanction relates only to managed care under health care plans, which only come into play under the no-fault statutory provisions for coordinated benefits, MCL 500.3109a.[8] *Tousignant v Allstate Ins Co*, 444 Mich 301; 506 NW2d 844 (1993). Section 3109a requires insurers to offer reduced premiums for coordinating no-fault benefits with health and accident coverage. *Sprague, supra* at 267.

In *Tousignant*, the Supreme Court held that a no-fault insurer is not liable for medical expenses that the insured's coordinated health care insurer is contractu-

---

[8] Effective June 3, 1974, the Legislature amended the no-fault act by adding § 3109a. 1974 PA 72; *Porter v Michigan Mut Liability Co*, 80 Mich App 145, 150 n 6; 263 NW2d 318 (1977).

ally required to pay for or provide.[9] *Tousignant, supra* at 303. The Court reasoned that the legislative purpose underlying § 3109a was one of avoiding duplicative payment, which required that an insured who chooses to coordinate coverage must obtain payment and services from the health insurer to the extent of the health coverage available. *Id.* at 306-308.

Under § 3109a, insurers are required to offer benefits coordination with health and accident coverage at appropriately reduced automobile insurance premium rates. *Tousignant, supra* at 304, 307; *Sprague, supra* at 267-268. Coordination is optional. *Tousignant, supra* at 307. Insureds who coordinate are deemed to have made the health insurer the "primary" insurer with respect to automobile accident injuries. *Id.* However, a no-fault insured who desires duplicative medical coverage from no-fault and health insurers can forgo the premium reduction for coordination and thus contract for dual coverage. *Id.*

In *Tousignant*, the no-fault claimant had coordinated coverage under a managed care health maintenance organization (HMO) provided through her employer, which as the PPO in this case, required that treatment be obtained from designated physicians or facilities. *Id.* at 304-305, 309. The Court recognized that a no-fault insured generally has a wide choice of physicians and facilities. *Id.* at 309. The Court noted, however, that § 3109a did not require that "other health coverage" with which the insured chose to coordinate, provide such a choice. *Id.* at 309. Further, "the legislative policy embodied in § 3107, requiring a no-fault insurer to

---

[9] *Tousignant* did not address issues that might arise where a health insurer fails to pay or reimburse an insured for an expense or, in the case of a health insurer who is also a provider, fails to provide medical care. *Tousignant, supra* at 303 n 2.

provide necessary medical expense, [did not] require that 'other health coverage' under § 3109a provide the no-fault insured with a choice of physician or facility." *Id.* at 309-310.

Managed care under the coordinated health and accident coverage of § 3109a is clearly distinguishable in concept from the general no-fault medical benefits under subsection 3107(1)(a), as are the legislative purposes underlying these provisions. General no-fault benefits under subsection 3107(1)(a) offer a range of choice. Managed care, under a PPO plan, offers only limited choice. The substitution of a PPO plan for no-fault general medical benefits is therefore not in keeping with the no-fault act.

Although our courts have sanctioned managed care under § 3109a health care plans, where the managed care does not meet the broader requirements of § 3107, an insurer remains liable for all reasonably necessary services pursuant to § 3107. Recently, in *Sprague, supra,* this Court held that where HMO coordinated coverage under § 3109a excluded coverage for chiropractic services, the no-fault insurer was liable for the chiropractic expenses to the extent that the plaintiff could show that they represent reasonable charges incurred for reasonably necessary services, subsection 3107(1)(a). *Id.* at 265, 270-271.

A similar result has been reached where other statutory mandates restrict access to the benefits in § 3107. In enacting the no-fault scheme, the Legislature provided for a setoff of government benefits that duplicate no-fault benefits to reduce and contain the cost of basic insurance. MCL 500.3109(1); *Morgan v Citizens Ins Co of America,* 432 Mich 640, 648; 442 NW2d 626 (1989). Where government benefits under subsection 3109(1) fall short of the § 3107 requirement of "reasonably

necessary" services, because of differences in quality and service, the requirements of § 3107 apply. *Id.* at 643, 648; MCL 500.3107(1)(a). The *Morgan* Court held that the no-fault claimant could be entitled to treatment at a nonmilitary hospital because subsection 3109(1) does not mandate the offset of all governmentally provided benefits, only duplicative benefits:

> The no-fault act preserves to injured persons a reasonable choice of hospitals and physicians although this may add to the premium cost of no-fault insurance. The no-fault insurer cannot, in the name of reducing the premium cost, require an injured person to obtain medical service from a particular provider. [*Id.* at 647-648.][10]

The fact that the Legislature expressly provided for reduced premiums in § 3109a with regard to coordinated health care benefits, and also provided for the offset of duplicative government benefits and reduced premium rates for deductibles under § 3109, further supports a conclusion that the Legislature did not intend premium reductions with regard to benefit limitation options under § 3107. Under the rules of statutory construction, provisions of a statute must be read in the context of the entire statute so as to produce an harmonious and consistent whole. *Cherry Growers, Inc v Michigan Processing Apple Growers, Inc,* 240 Mich App 153, 170; 610 NW2d 613 (2000). "The omission of a provision in one part of a statute, which is included elsewhere in the statute, should be construed as intentional. *Id.*

"The most striking feature of Michigan's no-fault system is that, apparently alone among the no-fault

---

[10] The Court noted that its holding was limited to coordination of governmental benefits and that it expressed no opinion concerning the situation where a claimant's health insurance was primary pursuant to § 3109a. *Morgan, supra* at 647 n 9.

states, it provides unlimited lifetime medical and reha-
bilitation benefits." House Legislative Analysis, HB
4156, July 29, 1993, p 1. "The no-fault act preserves to
the injured person a choice of medical service provid-
ers." *Morgan, supra* at 643; see also *Tousignant, supra*
at 309. On the contrary, inherent in the concept of
managed care is limited choice.

Michigan's no-fault insurance system has at its core
the premise—and the promise—of wide ranging medi-
cal benefits from the available spectrum of providers, in
exchange for which the driving public accepts the
statutorily prescribed, limited redress for personal in-
juries suffered. Farmers' PPO endorsement strikes a new
and entirely different bargain with policyholders, one
for which there are no legislative prescriptions. The fact
that, absent such prescriptions, Farmers has modeled
its offered option after the statutory prescriptions for
reduced premiums for optional coordinated health care,
§ 3109a,[11] while laudable, is nonetheless essential proof
that premium reductions for limited no-fault medical
benefits under § 3107 were not within the Legislature's
intent in enacting the no-fault act. Where the Legisla-
ture contemplated limitations on § 3107 benefits, asso-
ciated statutory requirements are provided in the act,
not left to the insurers' devise.

Further, Farmers' PPO option carries with it severe
penalty provisions, imposed when a no-fault claimant
acquires out-of-network services despite the policyhold-

---

[11] Section 3109a provides that an insurer shall offer premium reduc-
tions for coordinated health coverage and that the deductibles and
exclusions required to be offered shall apply only to benefits payable to
the person named in the policy, the spouse of the insured, and any
relative of either domiciled in the same household. Farmers' PPO endorse-
ment provides that policyholders who elect the endorsement will receive
a forty percent reduction in their PIP rate and that all policies in the
household are required to carry the PPO option.

er's agreement to the PPO endorsement. These penalties clash with no-fault precepts, and further convince us that the endorsement must be rejected as inharmonious with the no-fault regime established by the Legislature. *Cruz, supra* at 595–596, 598.

Managed care, and in particular the PPO option at issue, fundamentally alters the essential premise of Michigan no-fault insurance and is inconsistent with the no-fault act general benefit provisions. Incorporating managed care into the no-fault scheme, however beneficial or desirable from a policy standpoint, cannot emanate from the innovations of insurance companies or the courts, but only from the Legislature itself.[12]

Managed care, in the form of a limited provider network, clearly was not contemplated in the no-fault range of choice system for medical benefits prescribed under § 3107. Farmers' system of PPO-limited medical benefits inherently conflicts with Michigan's no-fault act. Because the PPO endorsement at issue is inconsistent with the act, the commissioner was obligated to

---

[12] In light of our resolution, we do not address the remaining issues and arguments of the parties. However, we note that petitioners' argument that pursuant to § 3157 providers are entitled to reimbursement of "reasonable amounts customarily charged for their services" fails in light of the recent decision in *Advocacy Organization, supra*. The statutory language in § 3157, referring to the amount the provider "customarily charges," is simply a cap on the amount health care providers can charge. *Id.* at 374, 377. Providers therefore have no entitlement to be reimbursed their customary charges. Further, we reject any argument that the enactment or subsequent repeal by referendum vote of 1993 PA 143 is determinative in this case. That legislation made comprehensive changes to Michigan's no-fault insurance scheme. Because the referendum rejected the act in its entirety, it has little bearing on the disposition of this case. At most, it is arguable that the Legislature's substitution of the phrase "medically appropriate" services in Public Act 143 for the phrase "reasonably necessary" services in § 3107 of the existing act further supports the conclusion that the latter phrase is incongruent with managed care concepts.

withdraw approval of the policy form incorporating the endorsement, pursuant to MCL 500.2236. The circuit court's reversal of the commissioner's decision was therefore not error.

Affirmed.

FITZGERALD, P.J., concurred.

WHITE, J. (*concurring*). I join in the majority opinion, except Section IV(A).[1] I write separately to make some additional observations.

The managed-care option at issue here is not expressly provided for by the no-fault act, MCL 500.3101 *et seq.* Thus, it is permissible and enforceable if it does not reduce the coverage required by the act, and is impermissible and unenforceable if it does. *Cruz v State Farm Mut Automobile Ins Co,* 466 Mich 588; 648 NW2d 591 (2002).

Defendants argue that the managed-care option does not reduce the coverage mandated by § 3107, MCL 500.3107, because, through the managed system, all reasonable charges incurred for reasonably necessary products, services, and accommodations for an injured person's care, recovery, or rehabilitation are covered. Acknowledging that this action was brought by provider groups, the dispositive inquiry in determining whether the endorsement violates the act is whether its enforcement results in the insured receiving less than the statutorily mandated coverage. Under the endorsement, the insured only receives the full benefits mandated by the act if services are obtained from a managed-care provider. If the insured, or a member of the insured's household, is injured and seeks a service from a provider

---

[1] I do not find it necessary to reach the issue addressed in that section.

that is not part of the managed-care network, a deductible that exceeds the amount permitted under the statute is incurred, and the amount to be paid for the reasonably necessary service will not be the reasonable charge, as required by statute, but the amount under the carrier's usual and customary fee schedule. Stated differently, while the endorsement may provide the required coverage if the insured goes to a managed-care provider, it clearly does not provide the required coverage if the insured does not go to such a provider. This is a violation of the no-fault act.

Defendants argue that the no-fault system contemplates that the insured will have a free choice of providers, and that this aspect of the act is not violated because all that is done here is that the choice is made when the insurance contract is entered into, i.e., the insured agrees at that time that the insured will only seek services from certain providers. The insurer and the insured may agree to anything that does not reduce the coverage provided by the act. If the insured chooses to restrict his or her options in exchange for a premium reduction, and then after injury honors that choice, the statute is satisfied. However, if the insured chooses to seek reasonable services for a reasonable charge from a provider that is not part of the managed-care network, and the insurer does not pay that charge, the no-fault statute has been violated. Thus, I conclude that the penalty provisions of the endorsement are illegal and unenforceable, and the commissioner should have withdrawn its approval. It is a separate question, not presented here, whether the endorsement would be valid if compliance after injury were voluntary on the part of the insured.

I also observe that in mandating that coordinated coverage be offered under the no-fault act, the Legisla-

ture acted against the backdrop of a regulated health insurance/managed health-care industry. The laws pertaining to that industry evince a careful legislative balancing of the sometimes conflicting interests of the insurers and plans, the health-care providers, and the health-care recipients. No such legislative controls are present here. An insured does not become a Preferred Providers of Michigan network participant by choosing the preferred provider organization endorsement.