MARKMAN, J.
(concurring in part and dissenting in part). I concur in both the analysis and the result reached by the lead opinion with respect to count I of the petition. However, with respect to count II, I do not believe that the traditional justiciability analysis that is normally applied to inquiries under Const 1963, art 6, § 1 is necessarily sufficient to dispose of the questions presented. Because I would order additional briefing and reargument on these questions, I cannot join in the lead opinion’s analysis and results with respect to count II.
I. BACKGROUND
Intervening respondents Farmers Insurance Exchange and Mid-Century Insurance Company offered an endorsement to their no-fault automobile policies in which insureds agreed to accept medical care from a network of preferred provider organizations (PPOs) in exchange for a 40 percent discount in their premiums. Petitioners Michigan Chiropractic Council and Michigan Chiropractic Society filed a request with respondent Commissioner of the Office of Financial and Insurance Services to conduct a contested-case hearing *388 and invalidate the endorsement as being contrary to the no-fault act, MCL 500.3101 et seq.
The commissioner concluded that there was nothing improper about the endorsement and declined to conduct a hearing. Included in the commissioner’s written order were findings of fact and conclusions of law addressing several of petitioners’ arguments. With respect to petitioners’ claim that the endorsement violated the rights of the insureds (count I), the commissioner concluded that the endorsement was not inherently inconsistent with MCL 500.3107 (setting forth the type of benefits a no-fault insurer is liable for under the act). With respect to petitioners’ claim that the endorsement violated the rights of medical providers (count II), the commissioner concluded that nothing in the no-fault act, including MCL 500.3157 (detailing allowable provider charges), conferred the right on any provider to be chosen to provide care, that nothing in the endorsement conflicted with the requirement that no-fault insurers pay reasonable and customary charges, and that the endorsement did not unreasonably or deceptively affect the risk purportedly assumed.[1]
The trial court reversed the commissioner, ruling that the endorsement was inconsistent with the no-fault act, and the Court of Appeals affirmed in a published opinion. Mich Chiropractic Council v Comm’r of the Office of Financial and Ins Services, 262 Mich App 228; 685 NW2d 428 (2004). The Court of Appeals concluded that the PPO option violated the no-fault act because it (1) limited an insured’s choice of medical providers and (2) could mislead consumers about the potential savings to be achieved in selecting this option.
*389 We granted leave to appeal, directing the parties to include among the issues to be addressed
(1) whether an optional managed care endorsement such as that offered by intervenors is permissible under the no-fault act, MCL 500.3101 et seq., (2) whether the Court of Appeals erred in relying on its finding that the endorsement is potentially deceptive and misleading, (3) whether petitioners have standing to bring their petition, in light of some number of their members having participated in the managed care program, or any other reason affecting standing, and whether petitioners have standing with regard to all or only some of the counts in their petition, and (4) the standard of review to be applied by the circuit court to the administrative decision denying the petition. [472 Mich 899 (2005).]
II. STANDARD OF REVIEW
Whether a party has standing and whether a dispute falls within the scope of the “judicial power” are constitutional questions, which we review de novo. Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608, 612; 684 NW2d 800 (2004); Warda v Flushing City Council, 472 Mich 326, 330; 696 NW2d 671 (2005).
III. ANALYSIS
The lead opinion focuses on justiciability inquiries usually raised in the context of questions regarding the scope of this Court’s “judicial power.” Const 1963, art 6, § 1. As noted by the lead opinion, whether the resolution of a case is within the “judicial power” is usually the dispositive inquiry with respect to whether this Court possesses jurisdiction over a claim, i.e., whether the claim is justiciable. Ante at 373-374. The “judicial power” is traditionally understood as the authority of the courts to adjudicate cases or controversies of, and to provide meaningful relief to, parties who have a con *390 crete and present interest in the outcome of a dispute. See Nat’l Wildlife Federation, supra at 614-615.
However, while most matters cognizable by this Court fall within this traditional scope of the “judicial power,” our jurisdiction is not always so defined. In certain instances, the Michigan Constitution specifically permits or requires the judiciary to take cognizance of actions that fall outside the traditional understanding of the “judicial power.” For instance, Const 1963, art 3, § 8 permits this Court to render advisory opinions “as to the constitutionality of legislation after it has been enacted into law hut before its effective date.”[2] See, e.g., In re Request for Advisory Opinion On Constitutionality of 2005 PA 71, 474 Mich 1230 (2006); Advisory Opinion on Constitutionality of 1986 PA 281, 430 Mich 93; 422 NW2d 186 (1988); see also In re Certified Question (Melton v Prime Ins Syndicate, Inc), 472 Mich 1225 (2005). Although an advisory opinion is outside the scope of the traditional “judicial power,” because there is no present case or controversy, this does not preclude us from entertaining such a case in light of the language of our Constitution effectively redefining the “judicial power” in Michigan.
With this in mind, I believe that significant questions arise with respect to whether the judiciary can— or must— take cognizance of the petitioners’ claims under Const 1963, art 6, § 28, which, at least on its face, does not seem to require that we engage in the usual *391 justiciability inquiries.[3] Const 1963, art 6, § 28, provides in part:
All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.
The use of the word “shall” indicates a mandatory and imperative directive. Burton v Reed City Hosp Corp, 471 Mich 745, 752; 691 NW2d 424 (2005). What is “provided by law” under the Insurance Code is that final decisions *392 will be subject to judicial review under Michigan’s Administrative Procedures Act (APA), MCL 24.201 et seq.:
A person aggrieved by a final order, decision, finding, ruling, opinion, rule, action, or inaction provided for under this act may seek judicial review in the manner provided for in chapter 6 of the administrative procedures act of 1969, 1969 PA 306, MCL 24.301 to 24.306. [MCL 500.244(1).]
The APA, in turn, provides that
[w]hen a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review, by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency’s final decision or order would not provide an adequate remedy. [MCL 24.301.]
Here, the commissioner denied petitioners’ request for a contested-case hearing, finding that they had failed to demonstrate probable cause in support of their request. However, rather than simply declining to hold a hearing, the commissioner proceeded to conclude, as a matter of law, that respondents’ PPO option did not violate the Insurance Code.[4]
*393 It seems reasonably clear that the commissioner’s order here constituted a “final order, decision, finding, ruling, opinion, rule, action, or inaction,” MCL 500.244(1), and fell within the scope of “final decisions, findings, rulings and orders of any administrative officer or agency. . . .” Const 1963, art 6, § 28. Given that the commissioner’s order contained findings of fact and conclusions of law, it also seems fair to characterize this order as “judicial or quasi-judicial” in nature. Id.
In light of the foregoing then, a number of questions arise:
(1) Does the fact that we are dealing with a “final decision^ ... of [an] administrative officer or agency,” Const 1963, art 6, § 28, authorize judicial review of the commissioner’s order independently of the justiciability inquiry required for cases traditionally heard pursuant to the “judicial power”? In other words, may this Court take cognizance of petitioners’ claims by virtue of Const 1963, art 6, § 28 and the APA, without regard to whether these claims are ripe and without regard to whether the parties have Cleveland Cliffs standing? Indeed, must we take cognizance of these claims? Moreover, if Const 1963, art 6, § 1 does require the judiciary to consider a case such as the instant one, does this *394 raise the concern that traditional requirements of standing can be circumvented by the mere tactic of first introducing a dispute into the administrative process? Would, for example, the brother of a chiropractor who challenged the administrative rule at issue in this case be equally empowered upon an adverse decision by the commissioner to pursue a judicial appeal?
(2) Notwithstanding Const 1963, art 6, § 28, to what extent, if any, is the commissioner’s decision subject to judicial review? In addition to presenting a significant issue concerning the relationship between an administrative agency and the judicial branch of government, this case presents a significant issue concerning the relationship between an administrative agency and the legislative branch of government, namely, whether the Legislature intended that the commissioner’s decision to hold a contested-case hearing, or not, constitutes an entirely discretionary and unreviewable decision.
It could be argued, perhaps, that, even if we concluded that petitioners had satisfied justiciability requirements, petitioners would still lack a remedy because the only remedy this Court could conceivably provide would be to order the commissioner to hold a contested-case hearing. However, on initial review, even that relief may be unavailable because the commissioner’s decision whether to hold a contested-case hearing would seem to be a discretionary one under MCL 500.2028 and MCL 500.2029, which provide, respectively:
Upon probable cause, the commissioner shall have power to examine and investigate into the affairs of a person engaged in the business of insurance in this state to determine whether the person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by sections 2001 to 2050. [MCL 500.2028 (emphasis added).]
*395 When the commissioner has probable cause to believe that a person engaged in the business of insurance has been engaged or is engaging in this state in an unfair method of competition, or an unfair or deceptive act or practice in the conduct of his business, as prohibited by sections 2001 to 2050, and that a hearing by the commissioner in respect thereto would be in the interest of the public, he shall first give notice in writing, pursuant to Act No. 306 of the Public Acts of 1969, as amended, being sections 24.201 to 24.315 of the Michigan Compiled Laws, to the person involved, setting forth the general nature of the complaint against him and the proceedings contemplated pursuant to sections 2001 and 2050. [MCL 500.2029 (emphasis added).]
The “nondelegation doctrine” forbids the delegation of legislative powers to the executive or judicial branches. Taylor v Gate Pharmaceuticals, 468 Mich 1, 8 n 5; 658 NW2d 127 (2003).[5] A delegation of power to an administrative agency is proper only when the controlling statute provides the agency with sufficient standards to effectively transform an administrative agency’s decision from a legislative decision into an executive decision. Taylor, supra at 10 n 9; People v *396 Turmon, 417 Mich 638, 641-642, 644; 340 NW2d 620 (1983). If there are no such standards, the delegation is improper because the Legislature’s powers have been improperly given to an agency of the executive branch. Blue Cross & Blue Shield of Michigan v Governor, 422 Mich 1, 53-55; 367 NW2d 1 (1985). In evaluating the sufficiency of legislative standards set forth in an act delegating power to an agency, we presume that the act is constitutional. Dep’t of Natural Resources v Seaman, 396 Mich 299, 309; 240 NW2d 206 (1976).
MCL 500.2028 and MCL 500.2029 suggest that the commissioner need not hold a hearing except on “probable cause” to believe that unfair practices have occurred or are occurring. Thus, it seems that the commissioner’s determination of probable cause is the critical event. We noted in Warda, supra at 334, that the courts have no authority to compel an actor belonging to another branch of government to undertake a decision or determination when such decision or determination is purely discretionary. The question naturally arises: Does the commissioner’s probable cause determination constitute a purely discretionary determination? Or has the Legislature provided, either explicitly or implicitly, any standards to guide this determination?
In Warda, we addressed the obligation of a city council (a legislative entity) to reimburse a police officer for legal fees incurred in defending himself against criminal charges. The officer sought, and the city council denied, reimbursement pursuant to MCL 691.1408(2), which provides:
When a criminal action is commenced against an officer or employee of a governmental agency based upon the conduct of the officer or employee in the course of employment, if the employee or officer had a reasonable basis for believing that he or she was acting within the scope of his or her authority at the time of the alleged conduct, the *397 governmental agency may pay for, engage, or furnish the services of an attorney to advise the officer or employee as to the action, and to appear for and represent the officer or employee in the action. [Emphasis added.]
In determining that the city council’s choice was a “purely discretionary” decision that was not subject to judicial review absent some constitutional infirmity, we reasoned:
The use of the word “may” in § 8 makes clear that the decision to pay an officer’s attorney fees is a matter left to the discretion of the municipality. Further, we note that the statute does not limit or qualify the word “may” (with, for instance, a requirement of reasonableness) or provide any other standards by which that discretion is to be exercised. As such, the Flushing city council had full discretion under MCL 691.1408(2) in choosing whether to reimburse plaintiffs attorney fees. [Warda, supra at 332.]
We also noted that
[t]he exercise of the “judicial power” by this Court, Const 1963, art 6, § 1, contemplates that there will be standards —legally comprehensible standards — on the basis of which agency decisions can be reviewed. Whether such standards consist of the provisions of the constitution, or the provisions of other pertinent laws, a judicially comprehensible standard is required in order to enable judicial review. [Id. at 339.]
Because the Legislature did not include any meaningful standard by which a court could review the exercise of the municipality’s discretion, we concluded that the city council’s decision to deny reimbursement was not subject to judicial review.
Unlike the standardless discretion statutorily afforded the municipality in Warda, however, the relevant statutes here provide that “[u]pon probable cause, the commissioner shall have power to examine and investí *398 gate,” MCL 500.2028, and that “[w]hen the commissioner has probable cause to believe that a person” is engaging in improper practices “and that a hearing by the commissioner in respect thereto would be in the interest of the public,” the commissioner shall take certain steps. MCL 500.2029.
In light of this language, can it be said that “probable cause” is, in fact, a standard being employed to guide the commissioner’s discretion? Or did the Legislature merely intend that “probable cause” serve to define a quantum of proof, and that the commissioner’s decision to hold a contested-case hearing is purely discretionary? “Probable cause” is a concept normally found in the criminal law,[6] but it is a well-understood and well-defined concept in our jurisprudence. As such, is “probable cause” a “legally comprehensible standards ... on the basis of which agency decisions can be [judicially] reviewed”? Warda, supra at 339. Or does “probable cause” instead establish a burden of proof that petitioners must satisfy? If it is merely a standard of proof, given that trial courts are accustomed to making probable cause determinations, and that appellate courts are accustomed to assessing whether trial courts have correctly established probable cause, does review of the commissioner’s determination concerning whether probable cause exists fall squarely within the judicial power? Or should it instead be inferred from the discretionary nature of the “probable cause” decision that the Legislature intended that the commissioner’s assessment of “probable cause” be unreviewable? If the *399 Legislature did so intend, does that body have the power to make such a decision unreviewable, given the language of Const 1963, art 6, § 28 and the nondelegation doctrine?
If we were to conclude that the commissioner’s ultimate decision in this case— denying the petition for a contested-case hearing and ruling that the PPO option was valid— was authorized by law— i.e., because no probable cause was found, the commissioner was not required to hold a hearing— is judicial review precluded upon that determination? Or does the ultimate question remain whether this is a “case[] in which a hearing is required”? Const 1963, art 6, § 28. If the latter is the case, would that require that we review the commissioner’s determination of a lack of probable cause? If so, would that decision be reviewed under the standard of “competent, material and substantial evidence on the whole record”? Have petitioners here shown that they have actually been harmed by the endorsement at issue, such that the commissioner’s determination was not supported by “competent, material and substantial evidence on the whole record”? Must they?
(3) Of what significance are the commissioner’s legal conclusions apart from his decision not to hold a contested-case hearing? Even if we were to conclude that the commissioner’s probable cause determination was discretionary and therefore unreviewable, it appears that MCL 500.2028 and MCL 500.2029 are not the only provisions relied on by the commissioner in reaching the decision. The commissioner also asserted that he possessed the authority to withdraw approval of insurance policy forms pursuant to MCL 500.2236(5). That provision provides:
Upon written notice to the insurer, the commissioner may disapprove, withdraw approval or prohibit the issu *400 anee, advertising, or delivery of any form to any person in this state if it violates any provisions of this act, or contains inconsistent, ambiguous, or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy. The notice shall specify the objectionable provisions or conditions and state the reasons for the commissioner’s decision. If the form is legally in use by the insurer in this state, the notice shall give the effective date of the commissioner’s disapproval, which shall not be less than 30 days subsequent to the mailing or delivery of the notice to the insurer. If the form is not legally in use, then disapproval shall be effective immediately.
The commissioner proceeded to conclude— apparently pursuant to his authority under MCL 500.2236— that the PPO option did not violate the Insurance Code. With respect to petitioners’ claim that the endorsement violated the rights of insureds (count I), the commissioner found that the endorsement was not inherently inconsistent with MCL 500.3107. With respect to petitioners’ claim that the endorsement violated the rights of medical providers (count II), the commissioner concluded that nothing in the no-fault act, including MCL 500.3157, conferred the right on any provider to be chosen to provide care, that nothing in the endorsement conflicts with the requirement that no-fault insurers pay reasonable and customary charges, and that the endorsement does not unreasonably or deceptively affect the risk purportedly assumed.
Thus, it appears that the commissioner did not merely decline to hold a contested-case hearing; rather, he also affirmatively reached a number of legal conclusions. Because petitioners are challenging these conclusions, and not simply the failure to hold a hearing, I am not certain that the arguably discretionary nature of the commissioner’s authority to hold a contested-case hearing under MCL 500.2028 and MCL 500.2029 is *401 dispositive of the justiciability inquiry. Rather, if petitioners are “aggrieved by a final order, decision, finding, ruling, opinion, rule, action, or inaction provided for under this act,” MCL 500.244(1), are they not entitled to proceed under the APA?
(4) Finally, are petitioners even “aggrieved” pursuant to MCL 500.244(1)? How is this determination made? Might this ultimately boil down to the equivalent of a justiciability inquiry? That is, can it be argued that an adverse decision at the administrative level is the equivalent of a “present injury” required to meet the standing and ripeness requirements?[7] Might it also be argued that an adverse decision below— even a decision on a matter that could not have been brought before the judiciary because it was otherwise not justiciable— itself constitutes a present injury?
*402 I believe these questions present constitutional issues that must be resolved for a proper determination of the case before us, and that they are not addressed, much less resolved, by the lead opinion. In my judgment, further briefing is required by the parties and further consideration is required by this Court.
TV. CONCLUSION
I do not believe that the justiciability analysis that is traditionally applied to inquiries under Const 1963, art 6, § 1 is necessarily dispositive in this case. Rather, a number of constitutional questions concerning the administrative process in Michigan exist apart from this analysis, and these questions should be resolved for a proper determination of the case before us. The lead opinion fails to address, much less answer, these questions. As such, I believe additional consideration by this Court is warranted, and I would direct the parties to file supplemental briefs on the issues raised in this opinion.

 The commissioner’s findings with respect to counts III and IV are omitted because those findings are not at issue on appeal here.

 That provision provides, in its entirety:
Either house of the legislature or the governor may request the opinion of the supreme court on important questions of law upon solemn occasions as to the constitutionality of legislation after it has been enacted into law but before its effective date. [Const 1963, art 3, § 8.]

 The justices in the lead opinion apparently believe that, because the parties have not raised this issue, we need not reach it. However, it has long been the practice of this Court to raise issues sua sponte where consideration of such issues is necessary to a full and fair determination of the case before it. See, e.g., City of Dearborn v Bacila, 353 Mich 99, 118; 90 NW2d 863 (1958); Auditor General v Bolt, 147 Mich 283, 286-287; 111 NW 74 (1907). “Where the adversarial process fails to provide valuable assistance, a court’s duty to correctly expound the law is not excused.” Mack v Detroit, 467 Mich 1211, 1213 (2002) (Young, J., concurring).
Moreover, questions relating to subject-matter jurisdiction, in particular questions of a constitutional dimension, may be raised at any time by the parties, or sua sponte by a court. Nat’l Wildlife Federation, supra at 630; MCR 2.116(D)(3). Subject-matter jurisdiction involves the power of a court to hear and determine a cause or matter. Langdon v Wayne Circuit Court Judges, 76 Mich 358, 367; 43 NW 310 (1889). It is conferred on the court by the authority that established such court. Detroit v Rabaut, 389 Mich 329, 331; 206 NW2d 625 (1973). Const 1963, art 6, § 1 established the current judicial system in Michigan, and Const 1963, art 6, § 28 provides that certain agency decisions “shall be subject to direct review by the courts . ...” Accordingly, it is entirely appropriate, in my judgment, that we address the effect of Const 1963, art 6, § 28 on the issues presented.

 In so doing, the commissioner was apparently acting pursuant to his authority under MCL 500.2236(5), which provides, in part:
Upon written notice to the insurer, the commissioner may disapprove, withdraw approval or prohibit the issuance, advertís *393 ing, or delivery of any form to any person in this state if it violates any provisions of this act, or contains inconsistent, ambiguous, or misleading clauses, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy.
The commissioner noted in his decision that he possessed the authority to withdraw approval of insurance policy forms pursuant to MCL 500.2236, and that in their complaint, petitioners specifically sought the withdrawal of the endorsement at issue under that section. Because the commissioner’s findings and conclusions went far beyond what was necessary to simply deny petitioners’ request for a contested-case hearing under MCL 500.2028 and 500.2029, I can only conclude that such findings were made pursuant to his authority under MCL 500.2236.

 As we noted in Taylor, supra at 8-9:
A simple statement of this doctrine is found in Field v Clark, 143 US 649, 692; 12 S Ct 495; 36 L Ed 294 (1892), in which the United States Supreme Court explained that “the integrity and maintenance of the system of government ordained by the Constitution” precludes Congress from delegating its legislative power to either the executive branch or the judicial branch. This concept has its roots in the separation of powers principle underlying our tripartite system of government. Yet, the United States Supreme Court, as well as this Court, has also recognized “that the separation of powers principle, and the nondelegation doctrine in particular, do not prevent Congress [or our Legislature] from obtaining the assistance of the coordinate Branches.” Mistretta v United States, 488 US 361, 371; 109 S Ct 647; 102 L Ed 2d 714 (1989).

 We have defined “probable cause” as “ ‘a reasonable ground of suspicion, supported by circumstances strong [in themselves] to warrant a cautious person in the bebef that the accused is guilty of the offense charged.’ ” See People v Richardson, 469 Mich 923, 929 (2003) (Corrigan, C.J., concurring) (citation omitted).

 At first blush, this position would appear to be consistent with the use of “aggrieved” in MCR 7.203(A), as interpreted recently in Federated Ins Co v Oakland Co Rd Comm, 475 Mich 286; 715 NW2d 846 (2006), in that it suggests that one is “aggrieved” when one has suffered an adverse decision below. MCR 7.203(A) provides that the Court of Appeals has jurisdiction of an appeal of right by an “aggrieved party” of:
(1) A final judgment or final order of the circuit court, or court of claims, as defined in MCR 7.202(6), except a judgment or order of the circuit court
(a) on appeal from any other court or tribunal;
(b) in a criminal case in which the conviction is based on a plea of guilty or nolo contendere;
An appeal from an order described in MCR 7.202(6)(a)(iii)-(v) is limited to the portion of the order with respect to which there is an appeal of right.
(2) A judgment or order of a court or tribunal from which appeal of right to the Court of Appeals has been established by law or court rule.