AFSHAR v ZAMARRON

Docket No. 169718. Submitted October 12, 1994, at Grand Rapids. Decided February 22, 1995, at 9:30 A.M.

Amir Afshar brought an action in the Wayne Circuit Court against Martha Zamarron, seeking both a determination of his paternity of Jessica A. Zamarron and joint legal custody of the child with specific visitation rights pursuant to the Paternity Act, MCL 722.711 *et seq.*; MSA 25.491 *et seq.*, and the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.* The plaintiff alleged that although the child was conceived and born during the marriage of the defendant to Jose Zamarron, Jose in his complaint for divorce alleged that blood tests revealed that he was not the father of the child, that the defendant admitted those allegations in her answer in the divorce action, and that the divorce judgment made no provision for the support or custody of Jessica despite making such provisions for another child of the marriage. The plaintiff also alleged that the defendant had signed an extrajudicial agreement acknowledging the plaintiff's paternity of Jessica. The trial court, Diane M. Hathaway, J., granted summary disposition for the defendant on the basis that the plaintiff lacked standing to file a complaint under either the Paternity Act or the Child Custody Act. Following a clarification by the court of its order, the plaintiff appealed.

The Court of Appeals *held:*

1. Absent a determination that a putative father is the natural or biological father of a child, a claim by the putative father under the Child Custody Act is barred. Because it is undisputed that the plaintiff did not seek a determination of paternity or an order of filiation under the Paternity Act before filing a complaint for custody under the Child Custody Act, the trial court properly determined that the plaintiff did not have standing to bring an action under the Child Custody Act.

2. A putative father may maintain an action under the Paternity Act only if the child is born out of wedlock. Section 1(a) of the Paternity Act, MCL 722.711(a); MSA 25.491(a), defines a child born out of wedlock as either a child begotten and born to a woman who was not married from the conception to the birth of the child or a child that a court has determined

to be a child born or conceived during a marriage but not issue of that marriage. The judicial determination that a child is not issue of a marriage must be made before the bringing of the paternity action in order for the putative father to have juris-·diction to bring an action under the Paternity Act. The allegations and acknowledgments in the divorce action, when coupled with the divorce judgment that implicitly holds that Jessica is not issue of the marriage, are sufficient to establish the plaintiff's standing to maintain an action under the Paternity Act.

3. The trial court abused its discretion in granting the defendant attorney fees for attorney services incurred as the result of opposing the plaintiff's motion for clarification of the court's order. Because the trial court granted the motion for clarification, it was an abuse of discretion to find that the plaintiff's motion was frivolous and that attorney fees were warranted.

Affirmed in part, reversed in part, and remanded.

*Vincent Schumacher,* for the plaintiff.

*Gail S. Benson,* for the defendant.

Before: Fitzgerald, P.J., and MacKenzie and L. M. Glazer,* JJ.

Per Curiam. Plaintiff appeals as of right from the trial court's order granting defendant's motion for summary disposition pursuant to MCR 2.116(C) (5)[1] on the ground that plaintiff, a putative father, does not have standing to bring an action under the Paternity Act, MCL 722.711 *et seq.*; MSA 25.491 *et seq.*, or under the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*, to determine the paternity and custody of a child born while the mother was married to another man. We affirm in part and reverse in part.

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Although defendant's motion for summary disposition was brought under MCR 2.116(C)(5) and (C)(8), following plaintiff's motion for clarification the trial court clarified that summary disposition was granted solely on the ground that plaintiff did not have standing. MCR 2.116(C)(5).

I

Jessica Angeline Zamarron was born on September 16, 1987, while defendant was married to Jose Zamarron. Jose Zamarron filed for divorce in August 1989, alleging in his complaint that blood tests revealed that he could not be the child's father. Defendant admitted these facts in her answer to the complaint for divorce. Jose and Martha Zamarron's judgment of divorce made no provision for the custody or support of the child.

Defendant and Jessica lived with plaintiff from May 1990 to July 1991. Plaintiff continued to have extensive visitation with the child from July 1991 through August 1992. The child recognized plaintiff as her father and, in April 1992, the parties signed an extrajudicial agreement acknowledging plaintiff's paternity.[2] Defendant remarried in July 1992 and shortly thereafter refused plaintiff any contact with the child. A determination at law of the child's paternity has not been made.

On September 8, 1992, plaintiff filed a "Complaint for Custody" pursuant to the Child Custody Act, wherein he requested joint legal custody with specific rights of visitation.[3] In her answer to the complaint, defendant neither admitted nor denied that plaintiff was the child's father and averred that whether plaintiff was the child's father was the subject of the present lawsuit. Defendant also asserted the affirmative defense that plaintiff did not have standing, because defendant had been a married woman at the time the child was conceived and born.

[2] The Agreement Acknowledging Paternity is attached as Appendix A.

[3] It appears that plaintiff originally brought his complaint for custody under the Child Custody Act on the basis of a belief that the written acknowledgment by both himself and defendant that he is the child's father legally established him as the child's father.

Subsequently, plaintiff was granted leave to amend his complaint to allege, inter alia, that there had been acknowledgment of paternity by virtue of plaintiff and defendant's "Agreement Acknowledging Paternity," as well as by Jose Zamarron's complaint for divorce and defendant's answer to the complaint for divorce whereby both Jose and defendant admitted that Jose was not the child's father. In the amended complaint, plaintiff sought a determination of paternity, in addition to joint legal custody and specific rights of visitation.

In April 1993, defendant filed a motion for summary disposition on the ground that plaintiff had not alleged that the child was "born out of wedlock" as that term is defined in the Paternity Act and, therefore, that plaintiff did not have standing to file a complaint under the Paternity Act or the Child Custody Act. The trial court agreed and granted defendant's motion for summary disposition on the basis of *Girard v Wagenmaker,* 437 Mich 231; 470 NW2d 372 (1991). The trial court subsequently granted in part and denied in part plaintiff's motion for clarification or to amend his complaint.

II

A proper action to determine paternity should be brought under and governed by the provisions of the Paternity Act. *Id.* at 251. Absent a determination that a putative father is the natural or biological father of a child, a claim under the Child Custody Act is barred. *Id.* It is undisputed that plaintiff did not seek a determination of paternity or an order of filiation under the Paternity Act before filing a complaint for custody under the Child Custody Act. Hence, the trial court properly determined that plaintiff did not

have standing to bring an action under the Child Custody Act. We disagree, however, with the trial court's finding that plaintiff did not allege sufficient facts to establish standing under the Paternity Act.

A putative father may maintain an action under the Paternity Act only if the child is born out of wedlock. *Girard, supra* at 243; MCL 722.714(6); MSA 25.494(6). The Paternity Act defines a child born out of wedlock as:

> [A] child begotten and born to a woman who was not married from the conception to the date of birth of the child, or a child which the court has determined to be a child born or conceived during a marriage but not the issue of that marriage. [MCL 722.711(a); MSA 25.491(a).]

In this action, we focus on the second definition of "born out of wedlock," namely, where a court previously has determined that a child born to a married woman is not issue of the marriage. In an action under this clause, a prior determination that the child is not issue of the marriage is required at the time of the filing of the complaint. *Girard, supra.* Although not artfully drawn, plaintiff's complaint essentially alleged that it was determined in the divorce action between Jose and defendant that the child was not issue of the marriage.[4] Indeed, at the hearing on defendant's motion for summary disposition, defendant argued that the judgment of divorce provided for the custody and support of the biological child of Jose and defendant but made no provision for the custody and support of Jessica.

---

[4] Plaintiff's complaint does not utilize the phrase "born out of wedlock," but it can be discerned from the allegations in the complaint that plaintiff was alleging that it was determined in a prior judicial proceeding that the child was not issue of the marriage and, therefore, was born out of wedlock.

In *Dep't of Social Services v Baayoun,* 204 Mich App 170; 514 NW2d 522 (1994), the Department of Social Services, on behalf of a minor child and Loretta Mathieu, the child's mother, brought an action in the circuit court seeking an order of filiation and support. The plaintiffs alleged that the child was conceived during the marriage of Loretta to Joseph Mathieu, but that Loretta was not married when the child was born and that the child was not issue of the marriage. The trial court denied summary disposition for the defendant, rejecting the defendant's assertion that the plaintiffs lacked standing under the Paternity Act because the child was not born out of wedlock within the meaning of the act. Following court-ordered blood tests that tended to establish that the defendant was the father of the child, the court again denied summary disposition for the defendant. This Court reversed, holding that, because it was uncontroverted that the child was conceived while his mother was married and because at the time of the filing of the complaint there had been no judicial determination that the child was not issue of the marriage, the child was not a child born out of wedlock within the meaning of the Paternity Act and the plaintiffs lacked standing to proceed under that act.

In *Baayoun,* the plaintiffs argued that the default judgment of divorce determined that the child was not an issue of the marriage. In rejecting the plaintiffs' argument, this Court noted that, because Joseph was not aware that Loretta was pregnant at the time of the divorce action, a divorce judgment that was silent with regard to the question of paternity and child support cannot be deemed to have determined the issue of paternity.

In contrast, a divorce judgment that is specific

with regard to the question of custody and support of one minor child of the marriage and that is silent with regard to another child may, under appropriate circumstances, be deemed to have determined the issue of paternity.[5] The present case presents an example of such circumstances. Jose alleged in his complaint that he could not be Jessica's biological father and submitted blood test results in support of the allegation. Defendant admitted the allegation. In a recorded divorce settlement, the parties acknowledged that there was only one minor child of the marriage. The judgment of divorce provides for the custody and support of that child but not for Jessica. Although the judgment of divorce makes no specific finding with regard to Jessica's paternity, the determination that Jessica is not issue of the marriage is implicit in the judgment of divorce.

Accordingly, we hold that plaintiff has established standing to maintain this action pursuant to the second clause of § 1(a) of the Paternity Act. If it is determined on remand that plaintiff is the child's natural or biological father,[6] plaintiff then will have standing to bring an action under the Child Custody Act. See *Girard, supra* at 251.[7]

---

[5] In divorce proceedings where the paternity of a child born in wedlock is at issue, the trial court should make an explicit factual finding whether the child is issue of the marriage. See *Serafin v Serafin,* 401 Mich 629; 258 NW2d 461 (1977).

[6] Effective October 1, 1995, if the court makes a determination of paternity and there is a dispute between the parties concerning custody or visitation, the court shall immediately enter an order that temporarily establishes custody and visitation of the child. The court shall then conduct a hearing as provided in the Child Custody Act to resolve the dispute. See § 7b of the Paternity Act, MCL 722.717b; MSA 25.497(2), as added by 1994 PA 388. We fully expect the dispute in the present case to be resolved before the effective date of § 7b.

[7] We feel compelled to express our dislike of the requirement that a putative father obtain a determination of paternity under the Paternity Act before bringing an action for custody under the Child Custody Act in situations where the mother of the child has unequivo-

III

Plaintiff also contends that the trial court abused its discretion in granting defendant's oral motion for attorney fees incurred as a result of opposing plaintiff's motion for clarification or for leave to amend the complaint. MCR 2.114. We agree. Neither the trial court's remarks at the motion hearing nor the order granting summary disposition clearly identifies the ground on which summary disposition was granted.[8] Indeed, the trial court granted plaintiff's motion for clarification. Under these circumstances, we conclude that the trial court abused its discretion in finding that plaintiff's motion was frivolous and that attorney fees were warranted. *Wojas v Rosati,* 182 Mich App 477, 480; 452 NW2d 864 (1990).

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.[9]

MACKENZIE, J.
I concur in the result only.

### APPENDIX

#### AGREEMENT ACKNOWLEDGING PATERNITY

This agreement is entered into between Amrol-

cally acknowledged the putative father as the natural father of the child. We invite the *Legislature to modify the Paternity Act to* provide that a written acknowledgment by both the man and the woman that the man is the father of a named child born out of wedlock legally establishes the man as the father of the child for all purposes. This modification would work to prevent the undeniable harm to a child that results when a mother unilaterally decides to terminate the child's contact with the putative father and the father is forced to seek a judicial determination that he is the natural father before bringing an action for custody or visitation.

[8] Specifically, it is unclear whether the trial court found that plaintiff failed to allege that the child was born out of wedlock, MCR 2.116(C)(8), or failed to establish that the child was born out. of wedlock, MCR 2.116(C)(5).

[9] Given our resolution of this case, we need not decide the remainder of the issues raised by plaintiff.

lah Afshar "Father," and Martha Mary Zamarron, "Mother" of the "minor child" Jessica Angeline Zamarron.

### PURPOSE

1. The parties intend to establish and fix their respective rights and interest as parents of the minor child.

### RECITALS

2. The Father, Amrollah Afshar, whose date of birth is April 21, 1949, was born in Kazerun, Iran. His social security number is . . . . He currently resides in San Jose, California.

3. The Mother, Martha Mary Zamarron, whose date of birth is March 28, 1956, was born in Detroit, Michigan. Her social security number is . . . . She currently resides in Redford, Michigan.

4. The minor child, Jessica Angeline Zamarron, whose date of birth is September 16, 1987, was born in Southfield, Michigan. Her social security number is . . . . She is presently living with her Mother.

### AGREEMENT

5. Each party covenants and agrees:

a. The minor child, Jessica Angeline Zamarron, is the natural child of the parties. Paternity was established by blood tests naming Amrollah Afshar as the natural father. Tests were performed at the William Beumont [sic] Hospital, Royal Oak, Michigan. Case No. 1486, Zamarron vs Afshar, in the Superior Court of the State of Michigan, sets out paternity.

b. The parties shall have joint legal custody of

the minor child. The Mother shall have primary physical custody.

c. The parties will cooperate as to visitation by the Father with the minor child. Should a disagreement arise and the parties are unable to resolve the problem, the parties agree to seek mediation or counseling.

d. The parties agree that it is in the best interest of the minor child to have an on-going caring relationship with the Father.

e. The parties agree thay [sic] have read this agreement and fully understand the legal consequences. They further acknowledge that they enter into this agreement of their own volition and free will without any coercion or duress.

DATE:   April 29, 1992    DATE:    April 29,1992