YOUNG, J.
Petitioners, two organizations representing the interests of Michigan chiropractors, challenged the validity of the “Preferred Provider Option” offered by appellants to their policyholders. In count I of their petition, petitioners claimed that the option violated the rights of the appellants’ insureds. In count II of their petition, petitioners claimed a violation of the rights of chiropractic providers. Regarding count I, we hold that *367 petitioners do not satisfy the test for third-party standing, and may not litigate the claims of appellants’ insureds. Regarding count II, assuming arguendo that petitioners have standing to sue on behalf of their membership, petitioners have not established an actual or imminent injury. Thus, petitioners’ claim is not ripe for judicial review. Therefore, we vacate the judgments of the circuit court and the Court of Appeals and reinstate the decision of the Commissioner of the Office of Financial and Insurance Services (the Commissioner).[1]
I. FACTS AND PROCEDURAL HISTORY
The appellant-insurers offer a “Preferred Provider Option” (PPO) to their no-fault automobile insurance policyholders, allowing their insureds to elect to limit their choice of medical care providers in the event they require personal injury protection (PIP) benefits. In exchange for reduced PIP premiums, insureds agree to receive treatment from a network of medical care providers maintained by Preferred Providers of Michigan (PPOM). In the event that a policyholder seeks treatment from a provider outside the PPOM network, the insured must pay a deductible, and provider reimbursement is limited to PPOM’s customary reimbursement rate. The “Preferred Provider Option” is entirely voluntary; if policyholders do not opt for the endorsement, they do not receive the premium discount and are not limited to the PPOM network of providers.
Appellants began offering the discounted policy option in July 2000.[2] In August 2000, petitioners filed a *368 request with the Commissioner for a contested case hearing pursuant to MCL 500.2028 and MCL 500.2029, claiming that the PPO endorsement violated the Insurance Code, MCL 500.100 et seq. Petitioners asked the Commissioner to withdraw approval of the endorsement pursuant to MCL 500.2236(5) and to issue a cease and desist order to respondents.[3]
The Commissioner sought additional information from respondents and petitioners, which petitioners refused to supply. On the basis of the record established, the Commissioner rejected petitioners’ request for a contested case hearing. The Commissioner concluded that the endorsement did not violate the no-fault act, MCL 500.3101 et seq. Petitioners appealed to the circuit court, which reversed the decision of the Commissioner and held that the “Preferred Provider Option” was not authorized by law.
The Court of Appeals affirmed the circuit court judgment, holding that respondents’ PPO endorsement was inconsistent with the no-fault act and that the authority to issue the endorsement must emanate from the Legislature.[4]
*369 We granted leave to appeal, directing the parties to address among the issues briefed whether petitioners had standing to challenge the Preferred Provider Option on behalf of appellants’ insureds and chiropractic providers.[5]
II. STANDARD OF REVIEW
Whether a party has standing is a question of law that we review de novo.[6] Moreover, questions of justiciability implicate constitutional separation of powers principles.[7] Constitutional questions are likewise reviewed de novo.[8]
III. ANALYSIS
a. JUSTICIABILITY
Our tripartite system of government is constitutionally established in both our state and federal constitutions. US Const, art III, § 1 confers upon the courts only “judicial power”; US Const, art III, § 2 limits the judicial power to “[c]ases” and “[c]ontroversies.” Similarly, our state constitution, Const 1963, art 3, § 2, provides:
The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution.
*370 The powers of each branch are outlined in the Michigan Constitution, which assigns to the Legislature the task of exercising the “legislative power,”[9] the Governor the task of exercising the “executive power,”[10] and the judiciary the task of exercising the “judicial power.”* [11]
In Nat’l Wildlife, this Court described and defined the Court’s constitutionally assigned “judicial power”:
The “judicial power” has traditionally been defined by a combination of considerations: the existence of a real dispute, or case or controversy; the avoidance of deciding hypothetical questions; the plaintiff who has suffered real harm; the existence of genuinely adverse parties; the sufficient ripeness or maturity of a case; the eschewing of cases that are moot at any stage of their litigation; the ability to issue proper forms of effective relief to a party; the avoidance of political questions or other non-justiciable controversies; the avoidance of unnecessary constitutional issues; and the emphasis upon proscriptive as opposed to prescriptive decision making. [471 Mich 614-615.]
In seeking to make certain that the judiciary does not usurp the power of coordinate branches of government, and exercises only “judicial power,” both this Court and the federal courts have developed justiciability doctrines to ensure that cases before the courts are appropriate for judicial action.[12] These include the doctrines of stand *371 ing,[13] ripeness,[14] and mootness.[15]
Federal courts have held that doctrines such as standing and mootness are constitutionally derived and jurisdictional in nature, because failure to satisfy their elements implicates the court’s constitutional authority to exercise only “judicial power” and adjudicate only actual cases or controversies.[16] Because these doctrines *372 are jurisdictional in nature, they may be raised at any time and may not be waived by the parties.[17]
Likewise, our case law has also viewed the doctrines of justiciability as affecting “judicial power,” the absence of which renders the judiciary constitutionally powerless to adjudicate the claim.[18] This is a point made in Anway v Grand Rapids R Co:[19]
“The duty of this court, as of every judicial tribunal, is limited to determining rights of persons or of property, which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion upon a question of law, that *373 opinion may have weight as a precedent for future decisions. But the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it. No stipulation of parties or counsel, whether in the case before the court or in any other case, can enlarge the power, or affect the duty, of the court in this regard.” [Citation omitted.]
Similarly, in Novi v Robert Adell Children’s Funded Trust,[20] this Court recently stated:
Where the facts of a case make clear that a litigated issue has become moot, a court is, of course, bound to take note of such fact and dismiss the suit, even if the parties do not present the issue of mootness. “ 1 “Courts are bound to take notice of the limits of their authority, and a court may, and should, on its own motion, though the question is not raised by the pleadings or by counsel, recognize its lack of jurisdiction and act accordingly by staying proceedings, dismissing the action, or otherwise disposing thereof, at any stage of the proceeding.” ’ ” Because “ ‘[t]he judicial power... is the right to determine actual controversies arising between adverse litigants,’ ” a court hearing a case in which mootness has become apparent would lack the power to hear the suit. [Citations omitted.][21]
Because “the most critical element” of the “judicial power” requires that a case contain a genuine controversy between the parties,[22] we must ensure that one exists before exercising our judicial authority. The judiciary arrogates to itself the powers of the executive and *374 legislative branches whenever it acts outside the constitutional confines of “judicial power.” Fidelity to our constitutional structure compels this Court to be “vigilant in preventing the judiciary from usurping the powers of the political branches.”[23] Thus, we reiterate that questions of justiciability concern the judiciary’s constitutional jurisdiction to adjudicate cases containing a genuine controversy.[24] Questions of justiciability may be raised at any stage in the proceedings, even sua sponte, and may not be waived by the parties.[25] Where a lower court has erroneously exercised its judicial power, an appellate court has “jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.”[26]
*375 b. THIRD-PARTY STANDING
In count I of their amended petition, petitioners challenge appellants’ policy endorsement as violating the rights of appellants’ insureds. Thus, count I of the petition concerns third-party standing — whether petitioners may litigate to vindicate the rights of others.
The general rule is that a litigant cannot vindicate the rights of a third party.[27] The rule disfavoring jus tertii — litigating the rights of a third party — “assumes that the party with the right has the appropriate incentive to challenge (or not challenge) governmental action and to do so with the necessary zeal and appropriate presentation.”[28] Furthermore, this rule reflects a “healthy concern” that if the claim is brought by a third party, “the courts might be ‘called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.’ ”[29]
As is often the case with general rules, there are recognized exceptions. While third-party standing is generally disfavored, federal jurisprudence has permitted, under certain limited circumstances, a litigant to assert the rights of another. In addition to requiring *376 that the litigant establish standing,[30] the litigant must also make two additional showings. First, the litigant must have a sufficiently “close relation to the third party.”[31] Second, “there must exist some hindrance to the third party’s ability to protect his or her own interests.”[32]
Michigan’s third-party standing jurisprudence is considerably less developed. In Mary v Lewis,[33] a garnishee defendant challenged the constitutionality of a codefendant’s prejudgment garnishment. This Court discussed and denied third-party standing to the defendant after discussing factors from a United States Supreme Court dissenting opinion:[34]
As a general rule, one party may not raise the denial of another person’s constitutional rights... . Defendant quotes portions of Justice Brennan’s dissent in Village of Belle Terre v Boraas, 416 US 1; 94 S Ct 1536; 39 L Ed 2d 797 (1974), where two exceptions to this general rule are discussed: first, those situations where there is evidence that the direct consequence of the denial of the constitutional rights of the other would impose substantial economic injury upon the party asserting the right; second, those instances where the litigant’s interest and the other’s interest intertwine and the latter’s rights may not be *377 effectively vindicated in any other manner because they are capable of evading constitutional review.
In this case the bank does not show how it qualifies under either of these exceptions.... We therefore conclude that the bank has no standing to interpose the due process rights of the principal defendant regarding the prejudgment garnishment. [399 Mich at 416.]
Thus, the Mary Court would permit jus tertii where a litigant could establish an economic injury, show that the interests between the litigant and the party possessing the right “intertwine,” and show that the third party’s rights “are capable of evading constitutional review.”
In our judgment, the test utilized by the Mary Court is analytically deficient. Requiring that a litigant establish an injury, economic or otherwise, is merely a component of our traditional standing doctrine.[35] Moreover, that the litigant and the third party have “intertwining interests” does not lead to the inference that the party establishing jus tertii will be an ardent proponent of the rights of the third party. The third factor is the most curious, for whether a claim is capable of evading review is a consideration that is recognized as relevant to mootness, not standing.[36]
Accordingly, we adopt the traditional federal test for third-party standing as articulated in Tesmer. A party seeking to litigate the claims of another must, as an initial matter, establish standing under the test established in Lee, supra [37] Second, the party must have a “close relationship” with the party possessing the right *378 in order to establish third-party standing. Last, the litigant must establish that there is a “hindrance” to the third party’s ability to protect his or her own interests.
As applied to the facts of this case, petitioners cannot meet the requirements of third-party standing and cannot litigate the rights of appellants’ insureds. Assuming arguendo that petitioners could satisfy the Lee elements,[38] and assuming without deciding that petitioners share a sufficiently “close relationship” with appellants’ insureds,[39] there is absolutely no evidence that any obstacle or hindrance prevents appellants’ insureds from protecting their own interests through litigation. Therefore, we hold that petitioners do not have standing to assert that the rights of appellants’ insureds were violated by appellants’ managed care endorsement.
c. RIPENESS
The doctrine of ripeness is closely related to the doctrine of standing, as both justiciability doctrines assess pending claims for the presence of an actual or imminent injury in fact.[40] However, standing and ripe *379 ness address different underlying concerns.[41] The doctrine of standing is designed to determine whether a particular party may properly litigate the asserted claim for relief.[42] The doctrine of ripeness, on the other hand, does not focus on the suitability of the party; rather, ripeness focuses on the timing of the action.[43]
Count II of the petitioners’ petition asserts that appellants’ managed care option violates the rights of chiropractic providers, including petitioners’ membership. As a nonprofit organization, petitioners have standing to litigate on behalf of their members to the degree that their members would have standing as individual plaintiffs.[44] The petition asserts that provid *380 ers “are entitled to be paid their reasonable and customary charge,”[45] but significantly, appellees assert as their injury that appellants’ policy endorsement violates MCL 500.3157 by reimbursing providers at a rate less than their customary charged.[46] Review of the record in this case reveals no evidence that any of petitioners’ members have experienced an actual injury as a result of appellants’ policy endorsement. Because petitioners seek relief for a hypothetical injury, the ripeness of the claim comes into question.
The ripeness doctrine is supported by both constitu *381 tional and prudential principles.[47] As a threshold matter, the Michigan Constitution permits the judiciary to exercise only “judicial power,” the “most critical element” of which is the requirement that a genuine controversy exist between the parties.[48] A claim lacks ripeness, and there is no justiciable controversy, where “the harm asserted has [not] matured sufficiently to warrant judicial intervention ... .”[49]
Petitioners’ allegation that appellants’ policy endorsement violates the rights of their members in violation of MCL 500.3157 is not yet ripe for review. Nothing in the record before us indicates that petitioners’ members have in fact been reimbursed at less than a reasonable amount. The lack of ripeness is further buttressed by the particularly fact-intensive nature of petitioners’ claim. MCL 500.3157 provides that chiropractors “may charge a reasonable amount” for services rendered. Petitioners have the burden of establishing the reasonableness of their members’ charges in order to impose liability on the insurer.[50] Moreover, questions surrounding the reasonableness of petitioners’ members’ charges are factual in nature and must be resolved by the jury.[51] Because the record is completely devoid of *382 any facts supporting an actual or imminent injury in fact, we conclude that petitioners’ claim is not ripe for review at this juncture and is not justiciable.[52]
IV CONCLUSION
Issues of justiciability concern the judiciary’s constitutionally delineated jurisdiction to exercise only “judicial power” and hear only cases involving an actual controversy. Therefore, questions of justiciability may be raised at any stage in the proceedings and may not be waived by the parties.
Regarding count I, we hold that petitioners do not satisfy the test for third-party standing, and may not litigate on behalf of appellants’ insureds. In count II, petitioners assert the rights of their members. Assuming that petitioners could otherwise litigate the claims of their members, petitioners have not established an actual or imminent injury; thus, the claim is not ripe for review.
We therefore vacate the judgments of the circuit court and the Court of Appeals and reinstate the decision of the Commissioner.
Taylor, C. J., and Corrigan, J., concurred with Young, J.

 Because we dispose of this case on the basis of standing and ripeness, we do not address the substantive merits of appellants’ appeal.

 The policy option was deemed approved after the Commissioner failed to act within 30 days after the endorsement was submitted for approval pursuant to MCL 500.2236(1).

 Petitioners’ amended petition contained four counts; however, only the two counts referenced above are relevant to this appeal. As noted, count I alleged that the endorsement violated the rights of insureds and count II alleged that the endorsement violated the rights of chiropractic providers. Count III alleged that the $500 deductible imposed when a policyholder sought treatment from a nonnetwork provider was a penalty, which “potentially imposes a tremendous hardship on insureds.” However, following an adverse decision by the Commissioner, petitioners did not seek review of count III in the circuit court. Count IV challenged appellants’ refusal to pay for chiropractic care in favor of allegedly comparable care provided by osteopathic physicians. This issue, which was not addressed by the Commissioner, was resolved in petitioners’ favor in Sprague v Farmers Ins Exch, 251 Mich App 260; 650 NW2d 374 (2002), lv den 469 Mich 914 (2003).

 262 Mich App 228; 685 NW2d 428 (2004).

 472 Mich 899 (2005).

 Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004); Crawford v Dep’t of Civil Service, 466 Mich 250; 645 NW2d 6 (2002); Lee v Macomb Co Bd of Comm’rs, 464 Mich 726; 629 NW2d 900 (2001).

 Nat’l Wildlife, supra; Lee, supra.

 Wayne Co v Hathcock, 471 Mich 445; 684 NW2d 765 (2004).

 Const 1963, art 4, § 1.

 Const 1963, art 5, § 1.

 Const 1963, art 6, § 1. As this Court noted in Anway v Grand Rapids R Co, 211 Mich 592, 598; 179 NW 350 (1920), “By the Constitution the judicial power was vested in the courts and it was vested in no other department of the government. To the courts was committed the judicial power and no other.” (Emphasis added.)

 Justiciability doctrines such as standing, “ ‘ “mootness, ripeness, political question, and the like — relate in part, and in different though overlapping ways, to an idea, which is more than an intuition but less than a rigorous and explicit theory, about the constitutional and prudential limits to the powers of an unelected, unrepresentative judiciary in our *371 kind of government.” ’ ” Travelers Ins Co v Detroit Edison Co, 465 Mich 185, 196; 631 NW2d 733 (2001), quoting Allen v Wright, 468 US 737, 750; 104 S Ct 3315; 82 L Ed 2d 556 (1984), quoting Vander Jagt v O’Neill, 226 US App DC 14, 26-27; 699 F2d 1166 (1983) (Bork, J., concurring).

 The doctrine of standing requires “the existence of a party’s interest in the outcome of litigation that will ensure sincere and vigorous advocacy.” House Speaker v State Admin Bd, 441 Mich 547, 554; 495 NW2d 539 (1993). In order to establish standing, a plaintiff must establish three elements: (1) that the plaintiff has suffered a concrete “ ‘ “injury in fact” ’ ”; (2) the existence of a causal connection between the injury and conduct complained of that is “ ‘ “fairly . .. tracetable] to the challenged action of the defendant” ’ ”; and (3) that the injury will likely be “ ‘ “redressed by a favorable decision.” ’ ” Lee, supra at 739, quoting Lujan v Defenders of Wildlife, 504 US 555, 560-561; 112 S Ct 2130; 119 L Ed 2d 351 (1992) (citations omitted).

 Ripeness prevents the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim is not ripe if it rests upon “ ‘contingent future events that may not occur as anticipated, or indeed may not occur at all.’ ” Thomas v Union Carbide Agricultural Products Co, 473 US 568, 580-581; 105 S Ct 3325; 87 L Ed 2d 409 (1985) (citation omitted). See also Dep’t of Social Services v Emmanuel Baptist Preschool, 434 Mich 380; 455 NW2d 1 (1990).

 Mootness precludes the adjudication of a claim where the actual controversy no longer exists, such as where “ ‘the issues presented are no longer “live” or the parties lack a legally cognizable interest in the outcome.’ ” Los Angeles Co v Davis, 440 US 625, 631; 99 S Ct 1379; 59 L Ed 2d 642 (1979), quoting Powell v McCormack, 395 US 486, 496; 89 S Ct 1944; 23 L Ed 2d 491 (1969). See also Wedin v Atherholt, 298 Mich 142; 298 NW 483 (1941).

 Lewis v Casey, 518 US 343, 349 n 1; 116 S Ct 2174; 135 L Ed 2d 606 (1996)(“standing... is jurisdictional and not subject to waiver”); Iron Arrow Honor Society v Heckler, 464 US 67, 70; 104 S Ct 373; 78 L Ed 2d 58 (1983) (courts “lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies”); *372 Reno v Catholic Social Services, Inc, 509 US 43, 58 n 18; 113 S Ct 2485; 125 L Ed 2d 38 (1993) (noting that ripeness doctrine is drawn from constitutional limitations on judicial power as well as prudential considerations).

 Reno, supra (noting that ripeness question may be raised on the Court’s own motion, and that the Court cannot be bound by the parties); Lewis, supra (standing not subject to waiver); Nat’l Org for Women, Inc v Scheidler, 510 US 249, 255; 114 S Ct 798; 127 L Ed 2d 99 (1994) (standing “remains open to review at all stages of the litigation”); Calderon v Moore, 518 US 149, 150; 116 S Ct 2066; 135 L Ed 2d 453 (1996) (“mootness can arise at any stage of litigation”).

 In contrast, an administrative agency does not possess “judicial power”; rather, the authority of the administrative agency is derived from the statute that created it. Holloway v Ideal Seating Co, 313 Mich 267; 21 NW2d 125 (1946). While administrative agencies “often act in a quasi-judicial capacity, it is recognized that they are established to perform essentially executive functions.” Judges of 74th Judicial Dist v Bay Co, 385 Mich 710, 727; 190 NW2d 219 (1971). As an administrative agency does not possess and may not exercise “judicial power,” neither is it bound by the limitations of “judicial power.” In other words, administrative agencies are not bound by the same justiciability limitations that affect the authority of the judiciary. See North Carolina Utilities Comm v Fed Communications Comm, 537 F2d 787 (CA 4, 1976); Tennessee Gas Pipeline Co v Fed Power Comm, 197 US App DC 1; 606 F2d 1373 (1979); Climax Molybdenum Co v Secretary of Labor, 703 F2d 447 (CA 10, 1983); Fed Communications Comm v Pacifica Foundation, 438 US 726, 735; 98 S Ct 3026; 57 L Ed 2d 1073 (1978).

 211 Mich 592, 615; 179 NW 350 (1920).

 473 Mich 242, 255 n 12; 701 NW2d 144 (2005).

 See also Justice Weaver’s lead opinion in Detroit Fire Fighters Ass’n v Detroit, 449 Mich 629, 633 n 3; 537 NW2d 436 (1995), where she noted that “[s]tanding is a jurisdictional issue that concerns the power of a court to hear and decide a case and does not concern the ultimate merits of the underlying substantive issues of the action.”

 Nat’l Wildlife, supra at 615.

 Lee, supra at 737.

 This notion of “constitutional jurisdiction” is conceptually distinct from “subject-matter jurisdiction.” The term “jurisdiction” is broadly defined as “the authority which the court has to hear and determine a case.” Ward v Hunter Machinery Co, 263 Mich 445, 449; 248 NW 864 (1933). Subject-matter jurisdiction is a court’s authority to try a case of a certain kind or character. See Bowie v Arder, 441 Mich 23, 39; 490 NW2d 568 (1992). Our authority to hear only cases containing a genuine controversy does not depend on the subject matter of the case; rather, it flows from the structural boundaries delineated in our constitution. See also Travelers Ins v Detroit Edison, supra (discussing distinctions between primary jurisdiction and subject-matter jurisdiction).

 We note that some recent Court of Appeals cases have erroneously equated standing with capacity to sue for the purposes of dispositive motions under MCR 2.116(C)(5). See, for example, Rogan v Morton, 167 Mich App 483; 423 NW2d 237 (1988); Afshar v Zamarron, 209 Mich App 86; 530 NW2d 490 (1995). However, as this Court previously noted in Leite v Dow Chemical Co, 439 Mich 920 (1992), the two concepts are unrelated. Our courts are admonished to avoid conflating the two.

 United States v Corrick, 298 US 435, 440; 56 S Ct 829; 80 L Ed 1263 (1936).

 See People v Smith, 420 Mich 1; 360 NW2d 841 (1984); Ver Hoven Woodward Chevrolet, Inc v Dunkirk, 351 Mich 190; 88 NW2d 408 (1958); People v Rocha, 110 Mich App 1; 312 NW2d 657 (1981). “[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.” Worth v Seldin, 422 US 490, 499; 95 S Ct 2197; 45 L Ed 2d 343 (1975) (citing Tileston v Ullman, 318 US 44; 63 S Ct 493; 87 L Ed 603 [1943]).

 Kowalski v Tesmer, 543 US 125, 129; 125 S Ct 564; 160 L Ed 2d 519 (2004).

 Id. (citation omitted).

 Singleton v Wulff, 428 US 106; 96 S Ct 2868; 49 L Ed 2d 826 (1976).

 Powers v Ohio, 499 US 400, 411; 111 S Ct 1364; 113 L Ed 2d 411 (1991).

 Id.; Tesmer, supra at 130.

 399 Mich 401, 416; 249 NW2d 102 (1976).

 In People v Rocha, 110 Mich App 1; 312 NW2d 657 (1981), the Court of Appeals rejected the defendant’s equal protection argument on the basis that the defendant could not assert the constitutional rights of a third party. Inexplicably, the Rocha panel did not cite or discuss this Court’s decision in Mary v Lewis, decided five years earlier. Rather, the panel relied on two law review articles in setting forth the requirements for third-party standing.

 See footnote 13.

 See Federated Publications, Inc v City of Lansing, 467 Mich 98; 649 NW2d 383 (2002); In re Midland Publishing Co, Inc, 420 Mich 148; 362 NW2d 580 (1984).

 See footnote 13.

 Petitioners’ amended petition maintains that petitioners are “unable to obtain reasonable access to no-fault insureds.” For the purposes of this opinion, we do not address whether this claimed injury is a legally protected interest, as required by Lee.

 Petitioners maintain that their members “provide reasonably necessary medical care” to appellants’ insureds. The patient-physician relationship is frequently deemed sufficiently intimate to permit third-parly standing. See Singleton, footnote 30 of this opinion (asserting rights of female patients regarding abortion); Griswold v Connecticut, 381 US 479; 85 S Ct 1678; 14 L Ed 2d 510 (1965) (asserting rights of married patients regarding contraceptives).

 See Warth v Seldin, supra, 422 US 499 n 10 (standing “bears close affinity to questions of ripeness”). See also 13A Wright, Miller & Cooper, *379 Fed Practice & Procedure, § 3531.12, p 50, noting that the justiciability doctrines are “tied closely together.” See also Wilderness Society v Alcock, 83 F3d 386, 390 (CA 11, 1996), noting that the “confusion in the law of standing and ripeness” was “hardly surprising,” as both doctrines require actual or imminent injury. However, an “important distinction” existed between the two doctrines.

 See Renne v Geary, 501 US 312, 320; 111 S Ct 2331; 115 L Ed 2d 288 (1991), which noted that “[jjusticiability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention.”

 “[W]hen standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable.” Flast v Cohen, 392 US 83, 99-100; 88 S Ct 1942; 20 L Ed 2d 947 (1968).

 “[Rjipeness is peculiarly a question of timing.” Blanchette v Connecticut Gen Ins Corps, 419 US 102, 140; 95 S Ct 335; 42 L Ed 2d 320 (1974). See also Navegar, Inc v United States, 322 US App DC 288, 292; 103 F3d 994 (1997) (ripeness “focuses on the timing of the action rather than on the parties seeking to bring it”); Peoples Rights Organization, Inc v City of Columbus, 152 F3d 522 (CA 6, 1998); Wilderness Society, supra at 390, noting that “[w]hen determining ripeness, a court asks whether this is the correct time for the complainant to bring the action.” (Emphasis in original.)

 Nat’l Wildlife, supra, 471 Mich 629. Appellants ask this Court to adopt the holding of Hunt v Washington State Apple Advertising Comm, *380 432 US 333; 97 S Ct 2434; 53 L Ed 2d 383 (1977), requiring additional elements to establish organizational standing. However, because we resolve this issue on ripeness grounds, we need not address the propriety of adopting Hunt.

 To the degree that petitioners seek relief based on the customary charges of their membership, the Court of Appeals panel below determined that petitioners’ argument failed in light of Advocacy Org for Patients & Providers v Auto Club Ins Ass’n, 257 Mich App 365, 377; 670 NW2d 569 (2003). See 262 Mich App 246 n 12. Advocacy Org was affirmed by this Court, with all six participating justices concluding that reasonable, rather than customary, fees are compensable. 472 Mich 91; 693 NW2d 358 (2005). Additionally, petitioners did not appeal the Court of Appeals ruling, nor did they file a cross-appeal. Therefore, the issue is not properly before us and will not be further reviewed. Therrian v Gen Laboratories, Inc, 372 Mich 487; 127 NW2d 319 (1964).

 As noted in footnote 45 of this opinion, the statute permits a medical provider to charge a reasonable amount for its services. MCL 500.3157 provides:
A physician, hospital, clinic or other person or institution lawfully rendering treatment to an injured person for an accidental bodily injury covered by personal protection insurance, and a person or institution providing rehabilitative occupational training following the injury, may charge a reasonable amount for the products, services and accommodations rendered. The charge shall not exceed the amount the person or institution customarily charges for like products, services and accommodations in cases not involving insurance.

 See Nat’l Park Hospitality Ass’n v Dep’t of Interior, 538 US 803, 807; 123 S Ct 2026; 155 L Ed 2d 1017 (2003). The prudential considerations require that a court consider both “ ‘the fitness of the issues for judicial decision’ ” and “ ‘the hardship to the parties of withholding court consideration....’” Thomas v Union Carbide, supra at 581 (citation omitted).

 Nat’l Wildlife, supra, 471 Mich 615. See also Thomas v Union Carbide, supra at 579 (ripeness must be established “[a]s a threshold matter”).

 Warth v Seldin, 422 US 490, 499 n 10; 95 S Ct 2197; 45 L Ed 2d 343 (1975).

 Nasser v Auto Club Ins Ass’n, 435 Mich 33; 457 NW2d 637 (1990).

 Id.

 See Johnson v Muskegon Hts, 330 Mich 631, 633; 48 NW2d 194 (1951) (Courts generally “will not decide a case or question, in or on which there is no real controversy” because “ ‘[i]t is not our duty to pass on moot questions or abstract propositions.’ ” [Citation omitted.]).