Kelly, J.
(concurring). Plaintiffs brought a suit alleging that defendants violated state law by entering into collective bargaining agreements that define and pro *356 vide benefits for same-sex domestic partners of school district employees. The circuit court did not reach the substantive issue but dismissed the suit, holding that the plaintiffs did not comply with the requirements of the statute that confers standing to sue, MCL 129.61. The Court of Appeals affirmed that ruling in a published opinion. Rohde v Ann Arbor Pub Schools, 265 Mich App 702; 698 NW2d 402 (2005).
A majority of this Court has affirmed the Court of Appeals result on the basis that, although plaintiffs satisfied the statutory demand requirements, they lack constitutional standing to proceed with the suit. I disagree with the majority’s standing analysis but agree with the decision to affirm, because I believe that plaintiffs did not satisfy the demand requirements of MCL 129.61.
FACTS
Plaintiffs are 17 individuals who pay state and local taxes used to fund the Ann Arbor Public Schools (AAPS). Defendants are the AAPS, its board of education, the president of the board, and the treasurer of the board. Intervening defendant is the Ann Arbor Education Association (AAEA), the exclusive collective bargaining representative of the teachers and other school personnel of the AAPS.
In 2000, plaintiffs directed letters to the following public officials: (1) the Governor of the state of Michigan, (2) legal counsel for the Executive Office of the state of Michigan, (3) the Attorney General of the state of Michigan, (4) the Superintendent of Public Instruction in the state of Michigan, (5) the Assistant Superintendent of Public Instruction, (6) the Washtenaw County Prosecutor, (7) nine members of the AAPS board of education, and (8) the superintendent of the AAPS. All the letters read as follows:
*357 I [or We] write to request that you investigate and halt the use of public funds to provide so-called “domestic partnership” benefits to employees of the Ann Arbor public schools. I [or We] believe that the School District’s extension of these benefits to its employees exceeds its authority and violates the state law governing marriage. I [or We] ask that you halt this illegal use of public funds at your earliest convenience.
The letters were sent by certified mail on December 15, 2000, and were received soon after. When no action was taken to halt the expenditure of public funds for benefits to the same-sex domestic partners of AAPS employees, plaintiffs brought suit in the Washtenaw Circuit Court under MCL 129.61. The crux of plaintiffs’ claim is that defendants improperly defined and recognized a new form of domestic relations and treated this relationship as the equivalent of marriage in violation of the Michigan defense of marriage act, MCL 555.1.[1]
The circuit court did not reach the substantive issue, the validity of the domestic partner policy, but dismissed on the ground that plaintiffs did not have standing to sue under MCL 129.61. The court held that (1) plaintiffs had not sued on behalf of or for the benefit of the treasurer of the district as contemplated by the express language of MCL 129.61, and that (2) plaintiffs did not comply with the mandatory requirements of MCL 129.61 that they make a demand before filing suit.
The Court of Appeals affirmed. It disagreed with the circuit court’s conclusion that the suit was not filed on *358 behalf of or for the benefit of the AAPS treasurer as required by MCL 129.61. However, the Court did agree that plaintiffs had failed to satisfy the demand requirements of MCL 129.61. The Court stated:
Pursuant to MCL 129.61, the party must contact the appropriate party (“the public officer, board, or commission whose duty it may be to maintain such suit”) and make a demand that a lawsuit be brought by that party for an accounting or recovery of misappropriated funds. Consulting a dictionary to ascribe the term “demand” its plain and ordinary meaning, we find that it provides the definition “to ask for with proper authority; claim as a right.” Moreover, the phrase “maintain such suit” indicates that the purpose of the demand requirement is to inform the appropriate party that legal action is forthcoming. Plaintiffs’ letters are merely a request that the alleged misappropriation stop; they are not a demand for legal action. Moreover, plaintiffs did not send a letter to the AAPS treasurer, the officer likely responsible for maintaining such a lawsuit. [Rohde, 265 Mich App at 709-710 (citations omitted).]
Plaintiffs applied for leave to appeal in the Supreme Court, and we heard oral argument on what constitutes an effective demand under MCL 129.61. 474 Mich 1120 (2006). We then granted leave to appeal, requesting that the parties additionally brief the issue whether plaintiffs have standing under Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004). 477 Mich 924 (2006).
STANDARDS OF REVIEW
We review de novo a trial court’s decision on a motion for summary disposition. Ostroth v Warren Regency, GP, LLC, 474 Mich 36, 40; 709 NW2d 589 (2006). This case involves a question of statutory interpretation, which is *359 also reviewed de novo. People v Tombs, 472 Mich 446, 451; 697 NW2d 494 (2005).
PLAINTIFFS FAILED TO SATISFY THE DEMAND REQUIREMENTS Of MCL 129.61
The underlying issue in this case is whether the use of public funds for benefits to same-sex partners of public employees is illegal. But the issue before this Court on appeal is whether a request for an investigation and a halting of the use of funds for such benefits constitutes an effective demand under MCL 129.61. The Court of Appeals decided that it did not and, therefore, held that the circuit court had properly granted summary disposition to defendants. I agree with both lower courts’ determination that plaintiffs have not satisfied the demand requirements of MCL 129.61.
MCL 129.61 provides:
Any person or persons, firm or corporation, resident in any township or school district, paying taxes to such political unit, may institute suits or actions at law or in equity on behalf of or for the benefit of the treasurer of such political subdivision, for an accounting and/or the recovery of funds or moneys misappropriated or unlawfully expended by any public officer, board or commission of such political subdivision. Before such suit is instituted a demand shall be made on the public officer, board or commission whose duty it may be to maintain such suit followed by a neglect or refusal to take action in relation thereto. Security for costs shall be filed by the plaintiff or plaintiffs in any such suit or action and all costs and expenses of the same shall be paid by the person or persons instituting the same unless and until a recovery of such funds or moneys be obtained as the result of such proceedings.
The confusion in this case arises because the statute requires “a demand ... on the public officer, board or *360 commission whose duty it may be to maintain such suit followed by a neglect or refusal to take action in relation thereto” but does not clearly define what action a plaintiff must demand.[2] By reading the statute as a whole and giving effect to every word, phrase, and clause, however, this issue is easily resolved. See Grimes v Dep’t of Transportation, 475 Mich 72, 89; 715 NW2d 275 (2006).
MCL 129.61 authorizes a taxpayer to bring suit “for an accounting and/or the recovery of funds or moneys misappropriated or unlawfully expended.” The statute requires that a demand be made on the party “responsible for maintaining such suit.” The dictionary definition of “demand” is “to ask for with proper authority; claim as a right.” Random House Webster’s College Dictionary (2001). It follows that, in order to make an effective demand, a plaintiff must ask the “party responsible for maintaining [the] suit” to undertake the action that the suit would accomplish, which is “an accounting[3] and/or the recovery of funds or moneys misappropriated or unlawfully expended.”
In this case, plaintiffs sent letters to the Attorney General, among others, requesting an investigation and a halting of the expenditure of future funds for benefits to same-sex partners of employees. The letters did not request any action with respect to past expenditures; it referred solely to the halting of future expenditures. Even assuming that those who received the letters included the *361 proper party to maintain a suit, the demand requirement was still not satisfied. Plaintiffs never asked anyone, as MCL 129.61 requires, for an accounting of past expenditures or the recovery of funds wrongfully spent.
Requiring plaintiffs to request the specific action that the suit would accomplish is consistent with the purpose of a demand requirement. The phrase “before such suit is instituted” indicates that the Legislature intended that the proper party be given notice and the first opportunity to act. See Chicago ex rel Konstantelos v Duncan Traffic Equip Co, 95 Ill 2d 344, 353-354; 447 NE2d 789 (1983) (holding that the purpose of a demand requirement in taxpayer lawsuits is to allow the legislative body the first opportunity to decide whether to take the requested action). The letters involved in this case did not request the specific action that would be accomplished by the taxpayer suit. Hence, the proper party was not given the first opportunity to review the matter and decide on its own whether to take this action.
THE STANDING ISSUE
A majority of this Court decides that plaintiffs satisfied the demand requirements of MCL 129.61. But the majority affirms on the basis that plaintiffs do not have standing. Because I would hold that plaintiffs did not satisfy the demand requirements, the standing issue need not be pursued. I am compelled, however, to point out the flaws in the majority’s analysis of this issue.
In Lee v Macomb Co Bd of Commissioners,[4] this Court expressly adopted the standing test articulated by the United States Supreme Court in Lujan v Defend *362 ers of Wildlife, 504 US 555; 112 S Ct 2130; 119 L Ed 2d 351 (1992).[5] The test has three elements:
First, the plaintiff must have suffered an “injury in fact” — an invasion of a legally protected interest which is (a) concrete and particularized, and Ob) “actual or imminent, not ‘conjectural’ or ‘hypothetical.’ ” Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be “fairly... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court.” Third, it must be “likely,” as opposed to merely “speculative,” that the injury will be “redressed by a favorable decision.” [Lee, 464 Mich at 739, quoting Lujan, 504 US at 560-561.]
In federal court, from which test articulated in Lee was derived, the general rule is that taxpayers do not have standing to object to a particular expenditure of funds. DaimlerChrysler Corp v Cuno, 547 US 332; 126 S Ct 1854; 164 L Ed 2d 589 (2006). “Standing has been rejected in such cases because the alleged injury is not ‘concrete and particularized,’ but instead a grievance the taxpayer ‘suffers in some indefinite way in common with people generally.’ ” Id., 547 US at_; 126 S Ct at 1862.
However, exceptions to this general rule exist. The United States Supreme Court has found that the rule that taxpayers do not have standing to challenge a particular expenditure of funds does not apply to mu *363 nicipal taxpayers. In Massachusetts v Mellon,[6] the Court held that an individual’s status as a federal taxpayer is insufficient to confer standing on that individual to challenge the constitutionality of federal action. Mellon, 262 US at 487. But, the Court also held, that “[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate.” Id. at 486.
Mellon predates by several decades the United States Supreme Court’s current three-part test for constitutional standing. Nevertheless, Mellon reconciles easily with the current standing inquiry. Mellon stands for the proposition that the economic injury of increased taxes suffered by a federal taxpayer is not enough to confer standing. By contrast, the allegedly illegal use of local tax dollars is a sufficiently direct and immediate injury to confer standing on municipal taxpayers.[7] And although the United States Supreme Court has not subsequently specifically addressed the standing issue in connection with a municipal taxpayer, it has reiterated this federal/municipal distinction on several occasions, implicitly ratifying it.[8] E.g., Cuno, 547 US at_; 126 S Ct at 1864-1865; ASARCO v Radish, 490 US 605, 613; 109 S Ct 2037; 104 L Ed 2d 696 (1989); Coleman v Miller, 307 US 433, 445; 59 S Ct 972; 83 L Ed 2d 1385 (1939).
*364 Here, in deciding that plaintiffs, who pay local taxes, do not have constitutional standing to sue, the majority summarily rejects Mellon and its progeny. I believe that this is an error. These decisions are persuasive authority and deserve at least to be given serious consideration, if not followed. I am at a loss to explain why the majority previously advocated adopting the federal standing test, yet in this case the same justices summarily dismiss federal caselaw when applying the test.
Contrary to the majority’s claims, I recognize that this Court is not bound by the United States Supreme Court’s decision in Mellon. However, I point out that the majority ignores federal precedent in this case when it has followed in lockstep federal precedent in other recent standing cases. E.g., Lee, 464 Mich at 740; Cleveland Cliffs, 471 Mich at 628-629; Michigan Chiropractic Council v Comm’r of the Office of Financial & Ins Services, 475 Mich 363, 377; 716 NW2d 561 (2006) (opinion by YOUNG, J.). I can see no reason why the majority would follow federal precedent in those cases but summarily dismiss it here.
The majority’s assertion that it is simply following this Court’s decision in Miller v Grandy [9] raises other questions. To embrace that argument, the reader must accept that the majority has blindly embraced Miller as having been correctly decided, even though Miller conflicts with federal precedent. At the same time, the reader must accept that House Speaker v Governor,[10] on which plaintiffs rely, should be overruled because the federal precedent from which Lee and Cleveland Cliffs are derived is preferable to House Speaker. The majority should be consistent in its use of federal precedent. Or, *365 if not consistent, it should at least articulate a principled reason for rejecting Mellon.[11]
CONCLUSION
The majority affirms the judgment of the Court of Appeals because plaintiffs do not have standing to sue. I agree with the majority’s decision to affirm, but I do so on separate grounds.
In order to make an effective demand under MCL 129.61, a plaintiff must ask the party responsible for maintaining the suit for an accounting or the recovery of unlawfully spent funds. Because, in this case, plaintiffs’ letters requested only an investigation and the halting of the expenditure of future funds, plaintiffs failed to satisfy the demand requirements of MCL 129.61. Accordingly, *366 the Court of Appeals correctly affirmed the circuit court decision granting summary disposition to defendants.

 MCL 551.1 provides:
Marriage is inherently a unique relationship between a man and a woman. As a matter of public policy, this state has a special interest in encouraging, supporting, and protecting that unique relationship in order to promote, among other goals, the stability and welfare of society and its children. A marriage contracted between individuals of the same sex is invalid in this state.

 The majority opinion finds that "a letter that conveys a call to act is sufficient to constitute a demand” under MCL 129.61. Ante at 339. However, it never explains what specific action plaintiffs must request in order to satisfy the demand requirement. Evidently, a call for an investigation and a halting of funds is sufficient, but the majority never explains what language it relies on to reach this conclusion.

 “Accounting” is defined as “a detailed report of the financial state or transactions of a person, company, etc.” Random House Webster’s College Dictionary (2001).

 464 Mich 726; 629 NW2d 900 (2001).

 As I stated in Nat’l Wildlife Federation v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004), I disagree with the majority’s holding in the case. Where a statute expressly authorizes an action for a violation of the act without the showing of a particularized injury, the Court should not apply the Lujan standard. Cleveland Cliffs, 471 Mich at 677 (Kelly, J., concurring in result only). I recognize with regret that this Court’s decisions in Lee and Cleveland Cliffs now constitute binding precedent.

 262 US 447, 487; 43 S Ct 597; 67 L Ed 1078 (1923).

 Plaintiffs also could likely show causation and the availability of redress because a favorable decision would result in stopping the flow of the disputed expenditures.

 For an extended discussion of federal standing decisions and the different treatment afforded federal, state, and municipal taxpayers see Hickman, How did we get here anyway: Considering the standing question in DaimlerChrysler v Cuno, 4 Geo J L & Pub Polity 47 (2006).

 13 Mich 540, 550 (1865).

 443 Mich 560; 506 NW2d 190 (1993).

 The majority claims that the statement in Massachusetts v Mellon distinguishing municipal taxpayers from federal taxpayers is dictum. As I explained above, the United States Supreme Court has stated on numerous occasions that Mellon established a federal/municipal distinction with respect to taxpayer standing. E.g., Cuno, 547 US at_; 126 S Ct 1864-1865; ASARCO, 490 US at 613; Coleman, 307 US at 445. The Court does not treat the distinction as dictum. Given that the United States Supreme Court recognizes the distinction as a holding, it would seem that the majority would not characterize it as dictum. Also, the majority’s position on this subject is inconsistent. By quoting Mellon for the proposition that a plaintiff must suffer a particularized injury, the members of the majority recognized, in Cleveland Cliffs, 471 Mich at 615, 616, that the decision on the standing issue in Mellon was a holding. The members of the majority do not explain why they have changed their view here. Also, the fact that the United States Supreme Court recently recognized the distinction in Cuno illustrates an important point: federal courts today are of a mind that municipal taxpayers generally have standing to challenge an allegedly illegal expenditure of their tax dollars, whereas state and federal taxpayers do not. Considering that this Court’s Lee/Cleveland Cliffs standing test was derived from federal law, the United States Supreme Court position on standing should be persuasive when this Court applies Michigan’s standing test.